**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Guadalupe ALCANTAR,**
**Defendant-Appellant.**

**No. 86–5198.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 1987.

Submission Deferred July 23, 1987.

Resubmitted Nov. 20, 1987.

Decided Nov. 20, 1987.

---

R.J. Coughlan, Jr., San Diego, Cal., for defendant-appellant.

William Braniff, Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Stephen W. Peterson, Asst. U.S. Atty., on brief, San Diego, Cal., for plaintiff-appellee.

Before NELSON, HALL and THOMPSON, Circuit Judges.

NELSON, Circuit Judge:

This appeal is hereby resubmitted.

Guadalupe Alcantar appeals her conviction for embezzling and converting bank funds in violation of 18 U.S.C. § 656. She objects to the conviction on three grounds: her actions did not constitute embezzlement, the jury instructions were improper, and the prosecution was permitted to exclude potential jurors based on their race without having its attempt to provide a neutral explanation for the exclusions subjected to rebuttal by the defense. We find this third ground convincing, and accordingly, we remand for further proceedings.

## SUMMARY OF FACTS

While Alcantar managed the San Ysidro Branch of the Bank of Coronado, she and her ex-husband Tomas engaged in a series of transactions to profit on the difference in the peso/dollar exchange rate between San Diego and the border town of Nogales, Arizona. The transactions involved two Nogales corporations that needed to exchange large amounts of dollars into pesos. They supplied Tomas with checks in dollar amounts. Tomas purchased wire transfers at a Nogales bank in the exact amount of the dollars provided to him, and transferred the dollars to the Bank of Coronado. In San Diego, Alcantar issued a Bank of Coronado cashier's check, which was then exchanged for pesos and wired to Tomas's account in Nogales, Mexico. Tomas then provided pesos to the Nogales companies at an exchange rate greater than the Nogales rate, but less than the San Diego rate, thus making a profit. Alcantar herself sometimes profited by obtaining the equivalent of a commission. Alcantar and Tomas engaged in fifteen money exchange transactions from January to March 1985, in amounts ranging from $3,960 to $250,000.

These transactions would not have violated any criminal law except that Alcantar issued the cashier's checks before the Bank of Coronado had received Federal Reserve confirmation of the Nogales bank's wire transfers. On some occasions, Alcantar issued a cashier's check after Tomas was on his way to wire the funds. On other occa-

sions, Alcantar issued a cashier's check after the Nogales bank had confirmed on the telephone that covering funds had been wired. Although Alcantar knew she was violating bank procedures when she issued cashier's checks before receiving covering funds, she was, according to the trial judge, "meticulous to make sure that the money was covered at the bank" and "almost paranoid about making sure there was no loss to the bank." The wired funds always arrived, and the Bank of Coronado never suffered a loss. Nonetheless, the government charged Alcantar with embezzlement and conversion of bank funds in violation of 18 U.S.C. § 656. The case was tried before a jury.

During the course of jury selection, the prosecution utilized its peremptory challenges to exclude from the jury all three Hispanics on the venire panel. Alcantar moved for a mistrial, contending that the prosecution's systematic exclusion of Hispanics from the jury violated her constitutional rights. After oral argument, the trial judge concluded that Alcantar had made a prima facie showing of racially motivated juror exclusion and required the prosecution to come forward with a neutral explanation of its challenges. Over Alcantar's objections, the trial judge permitted the prosecution to give its reasons for challenging the Hispanic jurors in an *ex parte, in camera* proceeding.

Two months later, during jury deliberations, the Supreme Court decided *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In light of that decision, Alcantar renewed her motion for a mistrial. Alcantar's counsel set forth on the record his reasons for believing that any neutral explanation offered by the prosecution must have been pretextual. He also argued that *Batson v. Kentucky* required that Alcantar be apprised of the prosecution's reasons for challenging the Hispanics and be allowed to rebut the explanation as pretextual. The trial court concluded that such a right of rebuttal would create a mini-trial, would eradicate the institution of the peremptory challenge, and was not required by *Batson v. Kentucky.*

Alcantar requested a series of jury instructions regarding the substantive requirements of embezzlement and defenses available for that offense. The district judge rejected those proposed instructions. The jury found Alcantar guilty of embezzlement and conversion of bank funds in violation of 18 U.S.C. § 656.

## DISCUSSION

Alcantar urges three objections on appeal: (1) that 18 U.S.C. § 656 does not apply to the facts of this case, and that even if it does, the prosecution presented insufficient evidence to sustain her conviction; (2) that the district court committed reversible error by refusing her requested jury instructions; and (3) that *Batson v. Kentucky* requires not only that a prosecutor offer neutral explanations for excluding jurors of a defendant's race by peremptory challenge, but also that defendants be allowed to rebut the prosecution's explanation as pretextual. Although we find the first two contentions without merit, we agree that Alcantar had a constitutional right to rebut the prosecution's explanation as pretextual in this instance.

1.  *Is 18 U.S.C. § 656 applicable to the facts of this case, and if so, was the evidence presented to the jury sufficient to sustain the jury's conviction of Alcantar?*

■ This court reviews de novo the question whether the trial court applied the correct legal standard to the case. *United States v. Nance,* 666 F.2d 353, 356 (9th Cir.), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982). In evaluating a claim that the evidence was insufficient to support a jury verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis added); *see United States v. Marabelles,* 724 F.2d 1374, 1377 (9th Cir.1984).

In relevant part, 18 U.S.C. § 656 imposes criminal liability on an officer of a federally-insured bank who "embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank." To establish a violation of the statute, the government must show "an intent to injure or defraud the [b]ank." *United States v. Stozek,* 783 F.2d 891, 893 (9th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 284, 93 L.Ed. 259 (1986). Alcantar argues that 18 U.S.C. § 656 should not be applied in this case because (1) her conduct resulted in no loss or real risk of loss to the bank; (2) she did not intend to harm the bank; and (3) she made an affirmative effort to insure that no harm would come to the bank.

Alcantar's contention that her transactions resulted in no loss or real risk of loss to the bank is irrelevant, for actual loss or risk of loss are not elements of the offense of embezzlement. *See United States v. Duncan,* 598 F.2d 839, 858 (4th Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); *United States v. Landers,* 576 F.2d 94, 96 (5th Cir.1978); *United States v. Scheper,* 520 F.2d 1355, 1358 (4th Cir.1975); *United States v. Fortunato,* 402 F.2d 79, 81 (2d Cir.1968), *cert. denied,* 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969). That Alcantar did not intend to harm the bank or that she took affirmative steps to protect the bank does not refute her guilt for violating 18 U.S.C. § 656. The requisite "intent to injure or defraud" is expressed in the disjunctive. *See United States v. Angelos,* 763 F.2d 859, 861–62 (7th Cir.1985) (stating that "[i]ntent to defraud—which means, to take financial advantage of a confidential relationship, ... —is all that is required to make out a violation of section 656; intent to injure the bank need not be shown"); *United States v. Beran,* 546 F.2d 1316, 1322 (8th Cir.1976) (stating that "restitution of bank funds [is not] a defense as the crime of misapplication is complete when the misapplication occurs"), *cert. denied,* 430 U.S. 916, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977); *Benchwick v. United States,* 297 F.2d 330, 334 (9th Cir.1961) (holding that defendants' intention that "the uncompensated use should be temporary and that the funds

should ultimately be restored does not alter the case").

There is ample evidence in the record to support a jury finding that Alcantar took advantage of her position of trust at the bank willfully to draw uncovered cashier's checks on the Bank of Coronado for her own benefit. She committed the crime of embezzlement in violation of 18 U.S.C. § 656.

2. *Did the district court commit reversible error in its instructions to the jury?*

When reviewing a claim of error relating to jury instructions, this court views the instructions in the context of the overall charge. *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975); *United States v. Abushi,* 682 F.2d 1289, 1299 (9th Cir.1982). A criminal defendant cannot insist upon particular language if the court's instructions fairly and adequately cover the issues presented. *United States v. James,* 576 F.2d 223, 226 (9th Cir.1978). "Challenges to the trial judge's language or his formulation of the charges justify reversal only for an abuse of discretion." *Abushi,* 682 F.2d at 1299; *see Park,* 421 U.S. at 675, 95 S.Ct. at 1913. However, "[a] defendant is entitled to an instruction concerning his theory of the case if it is supported by law and has some foundation in the evidence." *United States v. Winn,* 577 F.2d 86, 90 (9th Cir. 1978).

Alcantar contends that the district court erred in refusing to include certain instructions in the charge to the jury. Defendants' Proposed Instruction No. 17 stated that "fraudulent intent is negated by proof one had a *reasonable expectation* that deposits would cover the check(s) at the time it was presented for payment." The cases relied upon by Alcantar in support of the instruction involve prosecutions for check-kiting. *See, e.g., Williams v. United States,* 278 F.2d 535, 537 (9th Cir. 1960). Drawing a cashier's check on the Bank of Coronado, as Alcantar did, differs qualitatively from drawing on the credit of one's own account, as a check-kiter does.

This court has expressly recognized that the repayment defense has not been extended beyond check-kiting cases because although intent to cover funds in one's own account indicates the possibility of an accident, intent to repay someone else's funds does not indicate that one used them unintentionally. *United States v. Benny,* 786 F.2d 1410, 1417 (9th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986).[1]

█ Defendants' Proposed Instruction No. 27 stated that "[a] probability of loss to the bank is needed to establish an intent to defraud." This instruction is not an accurate statement of law. Defendants' Proposed Instruction No. 28 provided that Alcantar's "good faith intention to use the funds of [the Mexican corporations], not the Bank of Coronado, to make a profit constitutes a defense to the crime charged." However, in this circuit, "[a] defendant is not entitled to a separate good faith instruction when the court gives an adequate instruction on specific intent." *United States v. Green,* 745 F.2d 1205, 1209 (9th Cir.1984), *cert. denied,* 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985). By way of Instruction Nos. 24 and 29–34, the district court set forth in great detail the specific intent required for the jury to find Alcantar guilty of violating 18 U.S.C. § 656. Moreover, in response to questions posed by the jurors during deliberations, the district court supplemented its charge respecting the issue of specific intent with Instruction Nos. 42–44.[2] We therefore find no merit in Alcantar's challenge to the jury instructions.

3. *When Batson v. Kentucky requires the prosecution to offer a neutral explanation of its use of peremptory challenges to exclude jurors of defendant's race, must the defendant be allowed to rebut the prosecution's explanation as pretextual?*

█ The issue of whether a defendant has a constitutional right to rebut the prosecution's neutral explanation of its peremptory challenges presents a question of law that is reviewable de novo. *See United States v. Rabb,* 752 F.2d 1320, 1324 (9th Cir.1984), *cert. denied,* 471 U.S. 1019, 105 S.Ct. 2027, 85 L.Ed.2d 308 (1985).

In *Batson,* the Supreme Court reaffirmed its earlier rulings that the Equal Protection Clause forbids the prosecutor from challenging jurors solely on account of their race. 106 S.Ct. at 1719. The Court then held that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* at 1722–23. Once the defendant has made out a prima facie showing of purposeful discrimination, "the burden shifts to the State to come forward with a neutral explanation for challenging [jurors of the defendant's race]." *Id.* at 1723. Although the prosecution's explanation "need not rise to the level justifying exercise of a challenge for cause," *id.* the prosecution "may not rebut the defendant's *prima facie* case by stating merely that the challenged jurors ... would be partial to the defendant because of their shared race." *Id.* Rather, the prosecutor must "articulate a neutral explanation related to the particular case to

1. Defendants' Proposed Instruction No. 23 presented another variation of the repayment defense, and it was properly refused for the reasons set forth in the discussion of Proposed Instruction No. 17.

Defendants' Proposed Instruction No. 25 is substantially the same as Instruction No. 42, which the district court provided to the jury during its deliberations.

2. On the sixth day of jury deliberations, the jury asked the district court whether "intent to defraud" would be proven by their finding of certain facts. In response, the district court repeated a jury instruction stating "An intent to

defraud means an act with intent to deceive *or* cheat.... [A]n intent to deceive or cheat may be found where a defendant misrepresents the true state of facts with the intent that bank officials will be deceived."

Alcantar contends that this language "elevated any white lie or omission by appellant, to the status of a federal crime." Viewing the instruction as part of the entire charge, and particularly in the context of the jury's specific question, it cannot be said that the district court abused its discretion by instructing the jury with this language.

be tried." *Id.* The trial court must then determine "if the defendant has established purposeful discrimination." *Id.* at 1724.

Although the Court in *Batson* declined "to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges," *id.*, this circuit has begun to formulate such procedures. A district court must allow the defense to hear and respond to the prosecution's attempt to provide neutral explanations that rebut a prima facie case of discrimination. *See United States v. Thompson,* 827 F.2d 1254 (9th Cir.1987). The *Thompson* case relied on *Batson* and on the equal protection clause in reversing a district court's refusal to permit the defense an opportunity to hear the government's reasons for excluding Black potential jurors, and to argue that those reasons were pretextual.

The court in *Thompson* indicated only a limited exception to the right to hear and rebut the prosecution's explanation once a prima facie case of discrimination was made. That exception involved instances in which disclosing the prosecution's reasons for excluding jurors, in a particular case, would reveal the prosecution's strategy. *Thompson,* at 1259. Because the district court did not exclude Alcantar's counsel from the *in camera* proceeding based on the conclusion that the prosecutor would reveal case strategy, we cannot say that the *ex parte* proceeding was appropriate.

The *Thompson* panel noted that rebuttal by defense counsel could help the judge decide whether the government's reasons were pretextual. *Id.* at 1260. Defense counsel could point out false factual assumptions or improper motivations in the prosecution's explanations. *Id.* Defense counsel could also help to preserve a full record for appeal. *Id.* at 1261.

Because defense counsel was not present to rebut the prosecution's factual statements or to argue that the prosecution's arguments were pretexts for discrimination, we cannot say that the district judge's decision to hold an *ex parte* hearing was harmless error. Rather, we remand to the district judge, for a hearing to determine whether revealing to defense counsel the prosecution's explanation for striking the jurors threatens to undermine the prosecution's defense strategy. If the district court finds that the prosecution's reasons did not involve case strategy, it will conduct a hearing, with both the prosecution and defense present and participating, to determine whether the prosecution's reasons for excluding the three Hispanic potential jurors were neutral or pretextual, and shall enter an appropriate order thereon. The district court shall cause its order to be filed in that court and shall forward a copy of the order to this court to augment the record on appeal. Pending these hearings and the receipt of the district court's order, this court retains jurisdiction over this appeal. All further proceedings on appeal shall be calendared before this panel. REMANDED FOR FURTHER PROCEEDINGS.