UNITED STATES of America, Plaintiff–Appellee,

v.

Guadalupe ALCANTAR, Defendant–Appellant.

No. 86–5198.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 27, 1988.

Decided Feb. 28, 1990.

---

interest accrued on post-petition taxes are to be treated as administrative expenses and given a first priority status.

4. Bankruptcy Code section 541(d) is not to the contrary. That section involves "[p]roperty in which *the debtor* holds, as of the *commencement of the case*, only legal title" (emphasis added). By its own terms, section 541(d) applies only to property acquired by the debtor in the pre-petition period. In the instant case, of course, we deal with post-petition withholding.

5. Because we hold that Goldberg did not breach a trust duty, we need not decide whether Goldberg is liable for contribution to Tuchinsky.

R.J. Coughlan, Jr., Coughlan, Semmer & Lipman, San Diego, Cal., for defendant-appellant.

William Braniff, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before NELSON, HALL and THOMPSON, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

This case was originally heard on July 7, 1987. At that time, we remanded the case for a hearing, and retained jurisdiction to consider any issues left after the district court further developed the record. *See United States v. Alcantar*, 832 F.2d 1175 (9th Cir.1987) ("*Alcantar* I"). We now reverse appellant's conviction.

## I.

In *Alcantar* I, Guadalupe Alcantar ("Alcantar") challenged her conviction for conversion of bank funds on numerous grounds. All were rejected except her allegation that the prosecutor used peremptory challenges to discriminate against Hispanic jurors on the venire panel—two from the petit jury and one from the group of alternates. The district court promptly held an in camera, ex parte hearing to determine whether the peremptory challenges were discriminatory. At this hearing, the prosecutor explained that he challenged Carlos Zapata because he looked upset and because he spoke Spanish fluently. He challenged Marta Riquelme because she had a thick accent, which led him to believe that she did not speak English well, and because she spoke Spanish fluently. Finally, he challenged Martha Martinez because she lived in San Ysidro, the same city in which Alcantar worked, and might therefore know some of the witnesses, because she was a pre-school teacher who might therefore be overly sympathetic, and because she spoke Spanish fluently.

The prosecutor objected to fluent Spanish-speaking jurors because tapes of the defendant discussing her crimes in Spanish would be introduced as the primary evidence in the case against her.[1] Although the tapes would be translated into English for the jury, the prosecutor feared that Spanish-speaking jurors might interpret the tapes differently from the official translator, and would then influence the other jurors by claiming special expertise. The district court judge found that the peremptory challenges were not discriminatory. Alcantar was tried and convicted in May of 1986 of embezzlement and conversion of bank funds in violation of 18 U.S.C. § 656.

On appeal we held that the ex parte hearing on the reasons for the prosecutor's exclusion of Hispanic potential jurors was an inadequate procedure under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct.

1. In fact, the defense requested that all jurors speak Spanish fluently and the prosecution requested that no jurors speak Spanish.

1712, 90 L.Ed.2d 69 (1986), as detailed by us in *United States v. Thompson*, 827 F.2d 1254 (9th Cir.1987). We remanded for a hearing at which both prosecution and defense could present arguments. Once the defendant makes a prima facie showing of discrimination, as Alcantar did in the instant case, the prosecution must demonstrate a plausible, neutral explanation for the apparent discrimination. *Alcantar I*, 832 F.2d at 1179–80. The defense must be given the opportunity to hear the prosecutor's reasons for excluding the Hispanic potential jurors, and to argue that those reasons are pretextual. *Id.* at 1180.[2]

At the hearing on remand, no evidence was presented. The district judge admitted that he could not remember the specific jurors excluded, but found that his prior decision was correct and that the peremptory challenges did not violate equal protection. He did not specify which reasons he found to be plausible and racially neutral: that the jurors all spoke Spanish (the language reason), or the non-language reasons; Zapata's anger, Martinez's residence and occupation, and Riquelme's accent. No new trial was granted, and Alcantar's conviction was affirmed.

## II.

We directed counsel to brief two issues for the second phase of this appeal: (1) whether the adversary hearing held in the district court two years after jury selection and trial provided a meaningful process for testing whether the prosecutor's reasons for striking the Hispanic jurors were racially neutral; and (2) whether striking a native Spanish-speaking person from the jury, in a case where evidence will be presented in Spanish and then translated into English, violates *Batson* as a matter of law. Because we answer the first issue in the negative and reverse Alcantar's conviction, we need not reach the second issue.

### A.

Whether the hearing below was adequate to protect Alcantar's rights under the equal protection clause is a question of law that is reviewable de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc) *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The purpose of this hearing is to allow the defense counsel to point out false factual assumptions, or improper motivations in the prosecution's explanations, and to preserve a full record for appeal. *Alcantar I*, 832 F.2d at 1180. If "the passage of time has rendered such a hearing meaningless" for this purpose, the conviction must be vacated and a new trial scheduled. *Thompson*, 827 F.2d at 1262.

We find that the hearing below was inadequate under *Thompson*. This is particularly true as to the non-language reasons offered by the prosecutor. In order for defense counsel to meaningfully perform his role with regard to rebutting the prosecution's supposed neutral reasons for striking minority jurors, he needs to be given the opportunity to: (1) point out that the prosecutor's claims about the particular juror are false; (2) point out that although the prosecutor's claims about an excluded juror are true, similar claims can be made about non-excluded jurors who are not minorities, which should raise the suspicion of bad faith; and (3) argue that claims about the juror, although true, are so irrational as a reason for striking a juror that they might be pretexts for some undisclosed discriminatory reason.

Such opportunities were unavailable to Alcantar's counsel at the February 8, 1988 hearing in this case. Almost no information as to the excluded or accepted jurors was available to the attorneys or Judge

---

**2.** The limited exception to the right to hear and rebut the prosecution's explanation once a prima facie case of discrimination is made involves those instances in which disclosing the reasons for excluding jurors would reveal the prosecutor's case strategy. *Alcantar I*, 832 F.2d at 1180, *Thompson*, 827 F.2d at 1259. The district judge did not find this exception applicable in the case at bar. There was no potential for release of confidential information that would prejudice the prosecution's case, as they had made their preference for non-Spanish-speaking jurors public when they first moved for an English-speaking only jury.

Brewster. In fact, Judge Brewster stated that:

> I remember hearing [the prosecutor's in camera] offers as to why he challenged those three jurors. I remember that very distinctly. And the record shows exactly what he said. I remember at the time, based upon what I was then—fresh in my memory about the voir dire because I had just walked out of it so I knew what the jurors had said. I knew who they were and I remembered them.
>
> And at the time I made the ruling that the challenges were racially neutral, that they were not pretextual and that they were bona fide. I made that finding then.
>
> The problem is honestly and I'll be as candid as I can with both counsel—I can't do that today. I don't remember those jurors.

There was simply no way in this case, given the two-year delay before the hearing, for the court and the parties to reconstruct the circumstances as they existed at the time of the trial.

Had the hearing taken place at the time Alcantar objected, the excluded jurors could have been more easily recalled. The court could have asked Mr. Zapata if he was angry, and defense counsel could have attempted to show that other jurors were more angry than he. This would have demonstrated that the issue of anger may have been a cover for a racially-based decision. The court also could have asked Ms. Riquelme if she had any difficulty understanding English. Defense counsel would have had the opportunity to point out the logical flaw in the argument that because a person has a foreign accent that makes it difficult to understand them it follows that they have trouble understanding English. Defense counsel might also have had access to records indicating whether any other prospective jurors had a thick accent. Finally, the court could have asked Ms. Martinez if she knew any of the witnesses. Defense counsel might have had an opportunity to demonstrate that other jury members lived in San Ysidro, or worked with small children. This again would have indicated bad faith on the part of the prosecutor. Because none of this information seemed to be available when the hearing did take place, it was not possible for the defense to adequately challenge the prosecution's reasons as pretextual.

Judge Brewster made his determination based upon his memory of the jurors and circumstances as explicated in the ex parte hearing he held at the time of the trial with the prosecution. He told counsel at the February 8, 1988 hearing that "I made a determination at the time that I heard the reasons by the government. I made the determination from what I heard that I was convinced that the challenges were racially neutral ... I conclude that by reasons made then, I've heard nothing that changes my approach to the case.... I am forced to conclude that my conclusion then remains the same as it is now with the caveat that I wish I could be fresher in my recollection." We find that this memory does not suffice. Judge Brewster's agreement with the prosecutor two years before this hearing might well have been affected had the defense been permitted to offer contrary arguments under *Thompson*.

### B.

The prosecution argues that even if the hearing was inadequate as to the non-language reasons for exclusion, the language reason provided an independent justification that is neutral as a matter of law under the facts of this case. They reiterate that much of the evidence against Alcantar consists of Spanish-language tape recordings of incriminating conversations, and they did not want any fluent Spanish-speaking jurors reinterpreting this evidence apart from the official English translation, and possibly influencing other members of the jury. They contend that this reason comports with the *Batson* requirement that selection criteria be based upon a non-racially-biased intent—here the intent to exclude Spanish-language speakers, not Hispanics. That this may have the effect of excluding most Hispanics does not invalidate their neutral intent, according to the prosecution.

Alcantar, on the other hand, contends that fluency in the Spanish language can never be treated as a neutral selection criterion, because it is inextricably intertwined with Hispanics' national origin. She points out that we have previously recognized how closely tied Spanish language is to Hispanic identity. *See Gutierrez v. Municipal Court,* 838 F.2d 1031 (9th Cir.1988), *vacated as moot,* —— U.S. ——, 109 S.Ct. 1736, 104 L.Ed.2d 174 (1989). If the prosecution were truly concerned only with differing interpretations of the evidence, appellant argues, they could solve this problem in other ways, such as by having a juror who disagreed with a translation notify the court,[3] and agree in advance not to discuss his own interpretation with the other jurors.

We do not reach the question of whether Spanish–speaking ability can ever be a neutral justification for striking jurors under *Batson,* because the hearing in the instant case was inadequate to test the genuineness of any of the prosecution's proffered justifications for his peremptory strikes. Any evidence tending to show that the government's non-language reasons for striking jurors were pretextual would also have been evidence of bad faith on the part of the prosecutor, which may have infected his language justification. Since any such evidence was unavailable by the time of the hearing, it was impossible for the defense counsel to show pretext.

■ A similar situation existed in *Thompson,* where the prosecutor, at an ex parte hearing, explained to the judge that he "excused a black potential juror because 'he lived in the [defendant's] neighborhood —he's black, too, and he was dressed casually, and I thought he might identify with him too much....'" 827 F.2d at 1260. The court in *Thompson* noted that the part of the explanation concerning the place of residence might seem appropriately neutral, but the fact that the potential juror might identify too much with the defendant because they are of the same race is clearly

not. *Id.* Where both legitimate and illegitimate reasons are offered by the prosecution, the need for a meaningful adversarial hearing to discover the true motivation behind the challenges is especially strong.

Likewise in this case, even if the Spanish-language reason is accepted as neutral, this justification was offered along with others which may have been proven false at a timely adversarial hearing. Defense counsel may have been able to prove that the non-language reasons were a pretext, hiding a discriminatory intent. If it were true that the non-language reasons were merely excuses, this might have had an impact on the district judge's acceptance of the Spanish-language reason as neutral. Once the prosecutor was shown as possessing bad faith on the former reasons, the judge may have been less likely to view the latter reason as genuine and sincerely held. Of course if a timely and meaningful hearing had been possible in this case, it would also have given the prosecutor the opportunity to explain further his reasoning and perhaps dispel the inference that he acted from improper motives.

### III.

Judge Brewster felt bound, by our instructions in *Alcantar* I, to send this case back to us. He noted at the hearing that "if the court of appeals feels that under the circumstances to avoid any possibility of prejudice to the defendant that we should try the case again, then I'm ready to go.... I don't feel it's appropriate for this court to order a new trial in the face of the court of appeal's opinion." We now order a new trial.

REVERSED AND REMANDED.

---

**3.** This was, in fact, the initial compromise reached with the jurors and the district court

during voir dire.