**Leo E. KELLY, Jr., Petitioner,**

v.

**Pamela WITHROW, et al., Respondents.**

**No. 1:89 CV 1204.**

United States District Court,
W.D. Michigan, S.D.

April 13, 1993.

Kenneth M. Mogill, Carole M. Stanyar, Mogill, Posner & Cohen, Detroit, MI, for petitioner.

K. Davison Hunter, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Habeas Corpus Div., Lansing, MI, for respondents.

## AMENDED JUDGMENT

BENJAMIN F. GIBSON, Chief Judge.

The Court has reviewed the Report and Recommendation filed by the United States Magistrate in this action. The Court has also given new consideration and made a *de novo* determination of those portions to which specific objection has been made.

Pursuant to such review and determination, IT IS ORDERED that the Report and Recommendation of the Magistrate is approved and adopted as the opinion of the Court and this case is DISMISSED.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

BRENNEMAN, United States Magistrate Judge.

Petitioner, a prisoner currently incarcerated with the Michigan Department of Corrections, has filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.

### Background

Following a lengthy jury trial in June, 1982, petitioner was found guilty of two counts of first degree murder and sentenced to concurrent life prison terms. The murders occurred when petitioner shot two fellow University of Michigan students with a shotgun, after throwing a fire bomb in their dormitory.

The Michigan Court of Appeals affirmed petitioner's conviction on December 17, 1985. *People v. Kelly,* 147 Mich.App. 806, 384 N.W.2d 49 (1985). The Michigan Supreme Court, however, remanded the case to the Court of Appeals for consideration of the United States Supreme Court's decision in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). On June 19, 1987, the Court of Appeals, in turn, remanded the case back to the trial court for *Batson* considerations.

The trial court heard arguments on petitioner's *Batson* claim on July 17, 1987, and issued an opinion on September 18, 1987, finding that while petitioner had established a *prima facie* case of purposeful discrimination in jury selection, the prosecution had successfully rebutted petitioner's case with racially neutral explanations for the exercise of peremptory challenges regarding black venire members. The Michigan Court of Appeals affirmed the trial court's *Batson* decision on July 14, 1988. Thereafter, the Michigan Supreme Court denied petitioner's application for leave to appeal on November 30, 1988.

The facts of the case are well established and provided by the Michigan Court of Appeals opinion, *People v. Kelly,* 147 Mich.App. 806, 384 N.W.2d 49 (1985). Petitioner raises the following claims in the instant application for writ of habeas corpus. All except Argument II have been properly exhausted in the state courts.

I. DURING JURY SELECTION, THE PROSECUTION ENGAGED IN A PATTERN OF PEREMPTORY CHALLENGES WHICH AMOUNTED TO PURPOSEFUL DISCRIMINATION AGAINST BLACK VENIREPERSONS IN VIOLATION OF THE RULE ESTABLISHED IN BATSON V KENTUCKY, 476 US 79, 106 SCT 1712, 90 LEd2d 69 (1986).

II. GIVEN THE UNIQUE CIRCUMSTANCE OF THIS RACIALLY SENSITIVE CASE, THE ADMISSION OF PHOTOGRAPHS SHOW-

ING PETITIONER'S BOOKS RE-GARDING THE CIVIL RIGHTS STRUGGLE OF BLACK PEOPLE AND MARTIAL ARTS AND OF A NOTE ABOUT THE CIVIL RIGHTS MOVEMENT WERE FUNDAMENTALLY UNFAIR AND A DENIAL OF DUE PROCESS.

III. PETITIONER WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW AND AN IMPARTIAL JURY WHERE, DESPITE MASSIVE PREJUDICIAL PRE TRIAL COURT DENIED PETITIONER'S MOTIONS FOR CHANGE OF VENUE.

IV. THE TRIAL COURT'S ORDER COMPELLING PETITIONER TO SUBMIT TO POLYGRAPH, SODIUM BREVITAL AND HYPNOTIC EXAMINATIONS OR FORFEIT HIS RIGHT TO RAISE AN INSANITY DEFENSE, AND THE SUBSEQUENT ADMISSION AT TRIAL OF PSYCHIATRIC TESTIMONY PREMISED ON THE RESULTS OF THOSE EXAMINATIONS WAS VIOLATIVE OF PETITIONER'S FIFTH AMENDMENT PRIVILEGE AGAINST SELF–INCRIMINATION AND WAS SO FUNDAMENTALLY UNFAIR SO AS TO DEPRIVE PETITIONER OF DUE PROCESS.

V. THE TRIAL COURT'S ERRONEOUS AND MISLEADING INSTRUCTIONS TO THE JURY AT THE BEGINNING OF TRIAL AS TO THE BURDEN OF PROOF FOR THE INSANITY DEFENSE AND FAILURE TIMELY TO CORRECT THE ERRONEOUS IMPRESSION MADE UPON THE JURORS, IMPERMISSIBLY SHIFTED THE BURDEN OF PROOF ONTO PETITIONER IN VIOLATION OF DUE PROCESS OF LAW.

*Discussion*

In reviewing a state court judgment, a federal court does not act as a "super state supreme court." *Martin v. Wainright,* 428 F.2d 356, 357 (5th Cir.), *cert. denied,* 400 U.S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157 (1970). In addition, the degree of error required to justify reversal in a habeas corpus action is greater than that required on direct appeal. *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Hicks v. Scurr,* 671 F.2d 255 (8th Cir.1982). Such errors must be of constitutional proportion, *Dupuie v. Egeler,* 552 F.2d 704 (6th Cir.1977), and, taken as a whole and within the context of the entire record, have caused the substantial rights of the petitioner as secured by the Fourteenth Amendment to have been infringed. *Jenkins v. Borden Kircher,* 611 F.2d 162 (6th Cir.1979); *Washington v. Watkins,* 655 F.2d 1346 (5th Cir.) *rehearing denied,* 662 F.2d 1116 (1981). *See also Payne v. Janasz,* 711 F.2d 1305 (6th Cir.), *cert. denied,* 464 U.S. 1019, 104 S.Ct. 552, 78 L.Ed.2d 726 (1983). The court now turns to the issues in the case at bar.

I

In the instant case, voir dire lasted four days. Jurors stayed in a separate room and were voir dired individually. At the end of the jury selection, the prosecution had exercised all of its 15 peremptory challenges, including six it used against black venire members. No black persons were selected for the jury. Upon review, the trial court found no purposeful racial discrimination in the selection of the jurors by the prosecution.

Petitioner contends that the factual findings made by the state trial court regarding the racial composition of the jury venire do not merit the presumption of correctness mandated by 28 U.S.C. § 2254(d). Petitioner argues that by adopting the prosecution's explanations for exercising its peremptory challenges against black venire members rather than undertaking its own "juror-by-juror" findings, the trial court's findings are too ineffectual and insufficient to be entitled to the statutory presumption. Petitioner also maintains that the defense counsel should have been allowed to cross-examine the prosecution as to its explanations, and to

call the petitioner to testify during the *Batson* hearing.

■ In reviewing findings of fact made by a trial court, the Supreme Court has held that 28 U.S.C. § 2254(d) "requires federal courts in habeas proceedings to accord a presumption of correctness to state court findings of fact." *Sumner v. Mata*, 455 U.S. 591, 592, 102 S.Ct. 1303, 1303, 71 L.Ed.2d 480 (1982). The court noted that the statute explicitly provides that "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ..., shall be presumed to be correct." Only when one of seven specified factors [1] is present or the federal court determines that the state court finding of fact is not fairly supported by the record may the presumption properly be viewed as inapplicable or rebutted. *Id.*

■ In *Batson v. Kentucky*, 476 U.S. 79, 96–98, 106 S.Ct. 1712, 1722–24, 90 L.Ed.2d 69 (1986), the Supreme Court held that purposeful racial discrimination by a prosecutor in the selection of a jury, by the use of peremptory challenge, violates a defendant's rights under the Equal Protection Clause. Under *Batson*, a defendant alleging discrimination must make a *prima facie* showing of purposeful discrimination in the selection of the jury. The defendant makes such a showing by presenting facts and relevant circumstances that raise an inference that the prosecution used its peremptory challenges in order to exclude venire members because of their race. *United States v. Nichols*, 937 F.2d 1257, 1262 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 989, 117 L.Ed.2d 151 (1992). In its *Batson* decision, the trial court noted that petitioner's appellate counsel submitted an affidavit containing an uncontroverted assertion that the six black venire members excused in the case constituted the entirety of black membership of the venire. Based upon such assertion, the trial court found that petitioner had made a *prima facie* showing of discriminatory purpose by the prosecution in the exercise of its peremptory challenges.

■ If the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. The explanation may not be based merely upon intuitive judgment, denial of discriminatory motive nor affirmance of good faith. *Batson, supra,* at 97–8, 106 S.Ct. at 1723–24. The trial

---

1. Section 2254(d) Provides:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a State court, in determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the fact finding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record: And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

judge must then determine whether the relevant circumstances raise an inference of purposeful discrimination. *Id.*, at 98, 106 S.Ct. at 1724; *United States v. McCoy*, 848 F.2d 743, 745 (6th Cir.1988). Ultimately, it is the defendant who bears the burden of establishing a discriminatory animus on the part of the prosecution. *Hernandez v. New York*, — U.S. —, — – —, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991).

*Batson* further held that the trial court's decision on the question of discriminatory intent represents a finding of fact and is entitled to "great deference". *Id.* at 98 n. 21, 106 S.Ct. at 1724 n. 21; *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). In *Hernandez*, the Supreme Court re-emphasized that deference to a trial court's factual findings on the issue of discriminatory intent makes particular sense because the finding will "largely turn on evaluation of credibility." *Hernandez, supra,* — U.S. at —, 111 S.Ct. at 1869, *quoting Batson,* supra at 98 n. 21, 106 S.Ct. at 1724 n. 21.

"In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" (citations omitted).

*Hernandez, supra,* — U.S. at —, 111 S.Ct. at 1869. The precise formula used for review of fact findings, however, depends on the context. On federal habeas review of a state conviction, federal courts are required to accord state court factual findings a presumption of correctness. *Id.* A trial judge's finding that a prosecutor rebutted any inference of discriminatory intent will survive unless clearly erroneous. *U.S. v. Lewis*, 837 F.2d 415, 417 (9th Cir.), *cert. denied*, 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988).

In *Hernandez*, the Supreme Court further outlined the duties of a court in evaluating the race-neutrality of an attorney's explanation:

"In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. A court addressing this issue must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact ... Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" (citations omitted).

*Id.,* — U.S. at —, 111 S.Ct. at 1866.

Moreover, where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Anderson, supra,* at 574, 105 S.Ct. at 1511–12.

Prior to the *Batson* hearing in this case, the parties were given two weeks to file briefs and other relevant information. Petitioner's counsel filed nothing in response to the order, and prepared no evidence for the hearing. The prosecution offered the affidavits of the two Washtenaw County assistant prosecutors who had tried the case, in order to rebut the defendant's allegations of discriminatory purpose in the prosecution's use of its peremptory challenges.

At the *Batson* hearing, appellate defense counsel sought an adjournment to present evidence, which he stated would consist of cross-examination of the prosecution as to its reasons for striking the black venire members. Defense counsel also sought to obtain any notes taken by the prosecution during the time of jury voir dire. The trial court refused to permit a cross-examination of the prosecution, or to order the surrender of the prosecutor's notes.

Defense counsel then argued that the affidavits offered by the prosecution were insufficient and insubstantial on their face.

The court took the matter under advisement, allowing the parties an additional three weeks to submit any further evidence. (*Bat-*

*son* hearing p. 30). Defense counsel submitted a lengthy affidavit setting forth juror-by-juror responses and arguments in opposition to the prosecution's explanations regarding its peremptory strikes of the six black venire members. During this three week period, the defense had ample opportunity to review and investigate the prosecution's explanations, review jury questionnaires and speak to jurors in preparing its affidavit, which the defense did.

On September 18, 1987, the trial judge, who had presided both at the trial and at the *Batson* hearing, issued his *Batson* Findings and Order, finding that the reasons given by the trial prosecutors were racially neutral. The trial court adopted such reasons as its own, thereby making them the findings of the court. Consequently, it was not necessary for the court to make extensive and repetitive juror-by-juror findings. The trial court further noted at one point that the prosecution had passed the prospective jury for both cause and peremptory challenges at a time during *voir dire* when the jury included a black juror, thus demonstrating the prosecution's willingness to include a black person on the jury. This fact supported the trial court's finding that the prosecution's explanations were racially neutral. The court then found that the defendant had failed to meet his burden of demonstrating purposeful discrimination in the prosecution's exercise of its peremptory challenges.

 In the instant case, having independently reviewed the prosecutor's explanations, and the arguments of both parties, and the record before the court, I recommend that the court accord deference to the trial court's findings of fact regarding the *Batson* considerations. I concur in those findings. The trial court took a permissible view of the evidence in crediting and accepting the prosecution's explanations. Although not articulating factual findings on a juror-by-juror basis, the evidence shows that the findings made were not clearly erroneous. The trial court could rely on the fact that, at one stage of the voir dire in this case, a black venire member remained on the jury when the prosecution accepted the jury as satisfactorily constituted, in considering the veracity of the explanations offered by the prosecution. The defense chose not to accept the jury at that time.

While opening the door to equal protection arguments regarding the question of race in criminal jury selection, the Supreme Court in *Batson* failed to define the procedure trial courts were to follow at a *Batson* hearing. This chore was left to the lower courts.

 It is clear, based on the case law to date, that the nature and extent of a *Batson* hearing, if any, lies at least in the first instance within the discretion of the trial court. It may be sufficient, for example, for the trial judge to simply rule on an objection, made by a defense counsel during the course of jury selection to the effect that a prosecutor is exercising his peremptory challenges in a racially discriminatory manner. See *Riddick v. Edmiston*, 894 F.2d 586, 592 (3rd Cir. 1990). In other situations, at least a limited hearing may be necessary. In cases such as this one, where *Batson* has been retroactively applied, a defendant normally would not have had reason to object during voir dire based on the then-existing case law (and by the same token, the prosecutor would not necessarily have crystallized in his own mind the reasons for exercising a peremptory challenge).

Even where a hearing is necessary, however, the extent of the hearing remains discretionary with the trial judge. Whether to hold an evidentiary hearing in which witnesses are examined and cross-examined is left to the judgment of the trial court. *U.S. v. Garrison*, 849 F.2d 103 (4th Cir.) *cert. denied*, 488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988). A demand for "an evidentiary hearing in which prosecutors … would be examined and cross-examined misconceives the *Batson* inquiry." "*Batson* does not require this intrusion on the trial proceedings." *Id.* at 106, 106 S.Ct. at 1728.

 Indeed, under certain circumstances, the trial court may decide the matter in an *ex parte* proceeding. *U.S. v. Thompson*, 827 F.2d 1254 (9th Cir.1989).

In *United States v. Davis*, 809 F.2d 1194 (6th Cir.), *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987), the Sixth

Circuit upheld the district court's decision to hold an *in camera* rebuttal hearing and to seal the hearing record. The district court excluded both the defendants and their counsel from the hearing after the court had entertained arguments from both the prosecution and the defense regarding the general issue of racial exclusion. The Sixth Circuit found that the defendants' participation prior to the *in camera* review constituted a "serious treatment by the district court of their claim of racially motivated juror exclusion," and ruled that the defendants' presence at the later stage would have been merely "superfluous". Moreover, the court emphasized the *Batson* court's respect for judicial flexibility:

> "Once the defendants had established a prima facie case ..., there was nothing more defendants were required to do. Their participation was no longer necessary for the district court to make its determination. At that point, the district court was entitled to hear from the Government under whatever circumstances the district court felt appropriate."

*Id.* 809 F.2d at 1202.

■ Thus, while a defendant must be given the opportunity to challenge the prosecutor's reasons as untrue, pretextual or made in bad faith, *see U.S. v. Alcantar*, 897 F.2d 436 (9th Cir.1990), the court has wide discretion in selecting the *format* of the hearing. *See U.S. v. Davis, supra; U.S. v. Cartlidge*, 808 F.2d 1064 (5th Cir.1967). The *Batson* case alluded to the notion that the trial judges, experienced in voir dire, will be able to review the facts and arguments and decide the matter. *Batson, supra.*

■ I find that the procedure implemented by the trial court in this instance afforded the litigants a full and fair opportunity to be heard, and was constitutionally adequate. Defense counsel had every opportunity to submit evidence, affidavits and briefs to the court for its consideration.

I have also reviewed the individual explanations offered by the prosecutors, and accepted as findings of fact by the court, for peremptorily challenging each of the six black jurors. The prosecutors peremptorily challenged fifteen jurors, six of whom were black, and the defense perempted twenty whites. Forty-four other jurors were dismissed for cause. The explanations given for excusing the six black jurors are discussed below.

Juror number 92 was Lewis Freeman. Mr. Freeman failed to note on his jury questionnaire that he had children. When questioned about them, Mr. Freeman seemed saddened when he spoke of a son who had quit school and done nothing with his education. Since petitioner in this case was apparently having his own difficulties with school, and may have acted the way he did out of a sense of frustration, and since petitioner's father was going to testify at the trial, the possibility of a sympathetic relationship occurring between the two fathers became apparent to the prosecutor. The prosecutor had also prosecuted several people in the county with the same last name as this juror and did not know if the juror's son who had left school was also one of these persons.

Juror number 88 was Mary Fitch. She was excused for the same reason several other jurors were excused; namely, that she gave the prosecutor the distinct impression that she wanted to serve on the jury. The prosecutor was leery of, and routinely excused, persons he felt wanted to serve on major crime cases. The prosecutor also judged from Mrs. Fitch's demeanor during voir dire that she had an anti-law enforcement attitude.

Juror number 37 was Gladys Byars, and the prosecutor said that there was "no way" she would sit on any jury if he could help it. As a prosecutor, he had more than sufficient reason for this statement by any rational standard.

First, Mrs. Byars had been the foreperson on a recent jury which had returned a not guilty verdict in another case brought by his office, which had been, in the opinion of the prosecutor, an "extremely strong" case. That case arose out of a police sting operation where police bought stolen property from thieves or receivers of stolen property. The prosecutors thought the case was strong because the buys were videotaped. Despite "overwhelming" evidence, the jury in that

case returned a not guilty. The prosecutors did not want the foreperson of that jury to serve on petitioner's jury.

Second, the prosecutor also thought Mrs. Byars, who had been a probate court worker, was dishonest when she claimed she had never heard of the defense of insanity in a criminal case.

Finally, Mrs. Byars had previously been abusive to the chief assistant in the prosecutor's office when the chief assistant had refused to drop a criminal prosecution against Mrs. Byars' son for breaking into a neighbor lady's home and raping the woman in her basement. The son had been sent to prison. Indeed, the prosecutor's office had sent two of Mrs. Byars' sons to prison.

The prosecution challenged this juror for cause. For some reason this challenge was denied, and Mrs. Byars was then immediately challenged peremptorily.

Juror number 14 was Douglas Barden. He was excused because he too had sat on the jury which had returned a not guilty verdict in the videotaped sting operation, along with Mrs. Byars. The defense argues that this otherwise valid and race-neutral reason for challenging Mr. Barden should not be accepted, since the prosecutors left one member from the "sting" jury, a white woman named Ms. Clisham, on petitioner's jury.

The facts show that twelve of the acquitting jurors and alternates from the "sting" jury were called in petitioner's case. Eleven of the twelve were excused for cause or peremped by one side or the other. The prosecution used four of its peremptory strikes for this purpose, two against blacks and two against whites. Since the prosecution had only fifteen preemptory challenges to start with (versus twenty for the defense), it was probably happy the remaining "sting" jurors were challenged for other reasons. The prosecution stated that it also wanted to excuse the last of the "sting" jurors, Mrs. Clisham, for the same reason, but made the assessment that she, unlike Mr. Barden who was a supervisor of production at a General Motors plant, would not be as powerful (and therefore risky) figure during the jury's deliberation. In this respect, she was the less-

er of two evils. This was a rational distinction for a prosecutor to make who has only fifteen peremptory challenges to apply to nearly a hundred prospective jurors, twelve of whom he did not want because they were on the court's "sting" jury.

Juror number 62 was Sandra Watt. The prosecutor said he generally excused school teachers, such as Mrs. Watt, because he had not had good results with them. The prosecution also had the feeling that Mrs. Watt very much wanted to sit on the jury, a characteristic which, as previously noted, also bothered the prosecution. The prosecution also found hard to credit Mrs. Watt's assertion that, as a teacher and librarian, she had neither read nor heard anything about the insanity defense which had been in the newspapers. As a result of this combination of factors, she was peremptorily challenged.

Juror number 26 was Bonnie Washington. The prosecution excused Mrs. Washington as soon as they believed she was predisposed to the defense of insanity when a terrible crime occurred. Since there was no doubt in this case that petitioner killed the two students after fire bombing the dormitory, the only issue of consequence as far as the prosecutors were concerned was the issue of insanity. A juror's attitude on this issue was of paramount importance. Mrs. Washington stated in discussing another heinous murder, that by a man of his family, that "if he could commit that many murders, something had to be wrong with him." The prosecution did not want a person on the jury of this bent, who felt that the only explanation for an atrocious crime must be insanity. Such reasoning by a prosecutor is both rational and race-neutral.

 Whether or not a habeas or appellate court concurs with all of the tactical decisions made by these prosecutors, it must be remembered that it was the prosecutors, defense counsel and trial jury who had the opportunity to see and hear the prospective jurors firsthand. Also, the prosecutors did not know, because *Batson* had not been decided yet, that someday they would have to recall and explain these decisions in detail. Having reviewed the explanations offered by the prosecutors, which I find satisfactory un-

der the *Batson* test, there appears no reason to challenge the trial court's findings of fact, as they are supported by competent and substantial evidence. I also find that petitioner has not raised any arguments which would suggest that the presumption in favor of the state court findings of fact should be rebutted for these reasons. I recommend, therefore, that petitioner's claim that the prosecution violated his Fourteenth Amendment rights through the use of peremptory challenges in a racially discriminating manner, be dismissed.

## II

Petitioner alleges that certain pieces of evidence were improperly admitted at trial, contending they were not relevant and unfairly prejudicial.

At the outset, respondent points out that this issue was raised as a matter of state evidentiary law in the state appellate courts and not as a constitutional claim. Indeed, even in this court petitioner mentions "fundamental fairness and a denial of due process" only in passing, and raises, apparently for the first time, a first amendment claim as well.

 State prisoners must fully exhaust available state court remedies by fairly presenting the substance of each federal constitutional claim to Michigan's two appellate courts prior to coming in to a federal habeas court. *See Picard v. Connor*, 404 U.S. 270, 277–278, 92 S.Ct. 509, 513–14, 30 L.Ed.2d 438 (1971); *Dombkowski v. Johnson*, 488 F.2d 68, 70 (6th Cir.1973); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). Petitioner has not done so in this case. Where habeas petitions contain both exhausted and unexhausted claims, and the unexhausted claims are not withdrawn, the petition is subject to dismissal. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). For this reason, I recommend this petition be dismissed.

In the event, however, that the court wishes to reach the merits of this claim (and the remainder of the petition), it is necessary to put the nature of this crime in perspective. The following factual background is taken from the published opinion of the Michigan Court of Appeals, *People v. Kelly*, 147 Mich. App. 806, 384 N.W.2d 49 (1985).

Petitioner was a student at the University of Michigan where he lived on the sixth floor of a predominantly freshman dormitory. At about 6:00 a.m. on the morning of April 17, 1981, petitioner came out of his room and threw a fire bomb at another student, which bounced off the student, broke against a wall and started several fires. As students on the dormitory floor began to come out of their rooms, some in confusion, some to fight the fires, and some going door-to-door to warn other students, petitioner shotgunned two of them to death.

A search warrant was procured for petitioner's room and the search produced a shotgun, ammunition, a gas mask and materials that could be used in the preparation of 'Molotov Cocktail'. Two items introduced at trial, to which petitioner objects, were a photograph showing petitioner's books regarding the civil rights struggles of Afro–Americans and books dealing with the martial arts, and a handwritten note bearing the following writing:

Civil Rights Movement, 1950–1964
*Brown v Board of Education of Topeka, Kansas*
*It's all meaningless.*
*This is it.*

Petitioner was charged with first degree murder. The trial court ruled, pursuant to Rules 401 and 403, Michigan Rules of Evidence, that the exhibits were relevant and not unfairly prejudicial, and the Michigan Court of Appeals found this evidence had some tendency to prove petitioner's state of mind, did not lack temporal proximity to the murders, did not inject evidence of another crime into the trial, and was not unrelated to the elements of the offense charged.

 Non-constitutional claims are not cognizable in federal habeas proceedings. *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). Thus, to the extent that another trial judge might have exercised his or her discretion differently regarding the admission of these items into evidence, that question is not before the

court. Underlying this is the "clearly established rule that errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988). State courts are the ultimate expositors of state law. *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975). When this issue was appealed in the state courts it was raised as a matter of state evidentiary law, and ordinarily state rules of evidence do not present federal constitutional questions. *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944).

 This court may review a trial court's ruling on an evidentiary matter, but only when the state's evidentiary ruling has resulted in the denial of fundamental fairness, thereby violating the due process clause. *Id.* There was certainly no denial of fundamental fairness in this instance. Petitioner was charged with a specific intent crime and he had raised a defense of insanity. Anything going to the state of his mind, why he committed this heinous act, or the extent of his preparation, was relevant. Petitioner cannot now claim that because his behavior may have been perceived as having political overtones, it is somehow immune from consideration. Murder, even if for political reasons, is no less murder. A note left by a defendant prior to going on a rampage, indicating his frustration with a cause and ending with the ominous words, "This is it," is arguably quite relevant to the questions of premeditation and capacity.

Nor can petitioner seriously contend that if a jury knew that he possessed a martial arts book and a Pistol Guide, it would "inflame" them by showing him to be "a man prone to physical violence." If, in the course of their deliberations, the jury in this case reached a conclusion that petitioner was prone to violence, they obviously did so from petitioner's possession of a shotgun, ammunition, gas masks, and bomb-making material in his college dormitory room, and from his throwing a fire bomb at one student, randomly discharging his shotgun in a dormitory full of students, and in the course of this behavior

killing two students; not from his possession of these two books.

I find that the admission of the photograph and note did not violate any notions of fundamental fairness.

### III

Petitioner next claims that due to the allegedly extensive pretrial publicity and the trial court's denial of petitioner's motion for change of venue, petitioner was denied his right to due process and an impartial jury. At the close of jury selection, defendant's counsel, for the third time, and noting the apparent difficulty encountered by the court in impaneling a jury, moved for a change of venue. In denying the motion, the trial judge stated:

> We have a jury which I am satisfied is not contaminated in any way by pre-trial publicity or the existence of the *Hinckley* trial.

May 24, pp. 22–23.

 The test for whether the pretrial publicity necessitates a change of venue is whether a juror exposed to publicity "can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *United States v. Blanton,* 719 F.2d 815, 830–31 (6th Cir.1983). Furthermore, a trial court's finding that the jury is impartial may be overturned only if it is manifestly erroneous. *Patton v. Yount,* 467 U.S. 1025, 1031–32, 104 S.Ct. 2885, 2888–89, 81 L.Ed.2d 847 (1984).

 *Voir dire* in this case lasted four days. Petitioner acknowledges that forty-four prospective jurors were dismissed for cause. In addition, fifteen jurors were peremptorily challenged by the prosecution and twenty likewise by the defense. A review of the transcripts of *voir dire* leads to the conclusion that the trial judge did not commit error in denying defendant's motion for a change of venue. Each juror was questioned out of the presence of the other jurors and each party was given wide latitude in the scope of their questioning. It is also apparent that the trial court was quite liberal in granting challenges for cause.

428

■ Due process does not require that a jury be totally ignorant of the case, *Irvin v. Dowd*, 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961); rather, it requires that the jurors be able to render a verdict based on the evidence admitted in court. Since there is no reason to believe these jurors could not do that, I recommend that petitioner's claim that he was denied due process and trial by an impartial jury be dismissed.

### IV

Petitioner next claims that the use of a polygraph and the testimony of a psychiatrist allegedly based on the results of the polygraph denied him his Fifth Amendment right against self-incrimination and was so fundamentally unfair as to deprive him of due process.

The polygraph as used in the case at bar was not designed to focus on guilt or innocence, but rather was for the purpose of determining whether petitioner was deliberately refusing to discuss the crime or whether his amnesia was genuine. Were plaintiff to refuse the polygraph examination, he would not be allowed to present testimony of insanity at trial.

■ It is clear that the trial court's order compelling petitioner to undergo psychiatric analysis, or forego his insanity defense, is supported by law. Quoting *United States v. Albright*, 388 F.2d 719 (4th Cir.1968), the Michigan Supreme Court stated in *People v. Martin*, 386 Mich. 407, 427, 192 N.W.2d 215 (1971), *cert. den. sub nom. Lewis v. Michigan*, 408 U.S. 929, 92 S.Ct. 2505, 33 L.Ed.2d 342 (1972), that "a defendant's right not to incriminate himself is not violated *per se* by requiring him, in an appropriate case, to submit to a mental examination." *Id. See also Granviel v. Lynaugh*, 881 F.2d 185, 190 (5th Cir.1989) ("Raising an insanity defense constitutes a waiver of the defendant's protection against self-incrimination with regard to psychiatric testimony."), *citing Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).

■ Moreover, petitioner's rights to a fair trial were not compromised by the trial court's allowing the psychiatrist to testify as to his pre-polygraph impressions of petitioner. The polygraph results were not directly introduced, nor was there any evidence introduced in this regard as to petitioner's guilt or innocence. Petitioner maintains that the psychiatrist's testimony was tainted by the results of the polygraph. This argument is at best speculative. As the decision to allow the testimony was an evidentiary ruling, this court should not reverse such a decision absent a clear abuse of discretion.

### V

■ Petitioner's final issue concerns certain statements made by the trial judge during *voir dire*. Petitioner alleges that the judge gave erroneous instructions regarding the burden of proof as to petitioner's sanity. These statements were made to several jurors during their individual *voir dire*. There were no other jurors present when these statements were made.

A review of the trial transcripts shows that all of the jurors who apparently received erroneous instructions were excused either peremptorily or for cause. None of the jurors who were finally impaneled and rendered the verdict received erroneous instructions as to whether the state or the defendant had the burden of proof as to petitioner's sanity. Thus, even if the trial judge erred in his instructions, the error was certainly harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ("We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.").

### Conclusion

Petitioner has failed to raise any grounds showing that his trial was violative of any constitutionally protected rights. He has also failed to exhaust one of the grounds raised in relief. Accordingly, I respectfully recommend that petitioner's habeas petition be dismissed. Rule 8, Rules Governing § 2254 Cases in the U.S. District Courts.

Entered: 3/22/93

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).