**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward D. POPE, Defendant–Appellant.**

**No. 87–3774.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 1, 1988.

Decided March 9, 1988.

M. Karl Shurtliff, Boise, Idaho, for defendant-appellant.

Joanne P. Rodriguez, Asst. U.S. Atty., Boise, Idaho, for plaintiff-appellee.

Before ANDERSON and FLETCHER, Circuit Judges, and AGUILAR, District Judge.*

FLETCHER, Circuit Judge:

Appellant Pope appeals his conviction for escape and interstate transportation of a stolen vehicle. We reverse.

## FACTS

Edward Pope was convicted in April 1983, in Idaho, of interstate transportation of a stolen car. He was sentenced to prison and sent to the federal correctional facility in Springfield, Missouri. In January 1985, Pope was transferred to the Community Treatment Center at Channel Enterprises in Boise, Idaho—a halfway house that houses inmates near the ends of their sentences.

On February 26, 1985, Pope left Channel for a few hours to look for a job. He did not return. The next day, he took a pickup truck from a car dealer for a test drive. He called the dealer half an hour later to say he was going to the bank to get money to buy the truck. He never returned the truck. He was arrested a week later, on March 4, while driving the truck in Illinois.

On March 14, 1985, he was indicted in federal court in Idaho for escape and interstate transportation of a stolen vehicle, in violation of 18 U.S.C. §§ 751(a) and 2312. He was arraigned on March 20, and a jury trial was set for May 8. On April 12, Pope's attorney, John Lynn, gave notice his client would rely on an insanity defense. The prosecution moved for a pretrial psychiatric examination on April 19. On April 24, the defense made an ex parte request for the appointment of a psychiatrist, and on May 3 filed a Motion for Excludable Time, requesting a continuance of the trial to have psychiatric tests conducted. The trial court granted the motions. On May 23, it ordered psychologist Craig Beaver and psychiatrist Dr. Thomas Kruzich to examine the defendant. The court continued the trial to July 25, 1985.

On May 28, Lynn sent Dr. Kruzich, whom he hoped to use as a witness, a letter with a copy of the court's order appointing Kruzich to examine his client. On June 19, a psychologist evaluated Pope in the county jail and found him suicidal and homicidal. On the basis of that finding, the court ordered Pope transported back to the federal prison in Missouri for a mental evaluation.

In late July, Lynn again wrote Kruzich to tell him Pope had been sent to Missouri. He included with the letter a packet of medical records from a hospital where Pope had been previously hospitalized, and a copy of the psychologist's report. Pope returned from Missouri on August 6. For the next five weeks, Lynn tried several times to reach Kruzich by phone to schedule the evaluation of Pope, but succeeded only in leaving messages. Because of "scheduling conflicts," the two were unable to speak directly.

On August 21, trial was again continued to September 23. On September 10, two weeks before trial was to start, Lynn wrote Kruzich a third time, reminding him of the needed evaluation and including a copy of the evaluation done in Missouri. On September 19, the court held a sanity hearing to determine whether Pope was competent to stand trial. At the hearing, Pope asked the court to appoint him a different attorney, because Lynn had yet to contact Kruzich. The court denied the request for change of counsel and found Pope competent to stand trial.

On September 23, 1985, before trial began, Lynn asked for a continuance in order that Kruzich could examine Pope. The motion was denied, and trial commenced.

Pope testified that he had left Channel to go to a job interview. He said he had taken several drugs that day, had spoken to the devil and to his grandparents in a suburb of Heaven. He testified that he could remember nothing else until waking up in the Salt Lake City jail. The psycholo-

* Honorable Robert P. Aguilar, United States District Judge, Northern District of California, sitting by designation.

gist who had interviewed Pope testified for the government that at the time of his interview with Pope, June 19, he concluded Pope was suffering from schizophrenia and should be hospitalized. Another psychologist told the jury that Pope had possibly abused drugs, was depressed and had a psychosocial personality difficulty. He did not think Pope was schizophrenic, however, and concluded he had the capacity to appreciate the nature of the charge against him and assist in his defense.

The jury found Pope guilty on both counts. The court denied his motions for a new trial and sentenced him to a total of seven years.

Pope did nothing for several months. In July 1986, he filed a motion for appointment of an attorney to handle his appeal. The district judge, finding Pope's appeal not in good faith and untimely, denied the motion. On December 1, 1986, Pope moved to vacate his sentence pursuant to 28 U.S.C. § 2255. The Government stated that it did not oppose the motion. After reviewing the record, the district court found Pope's claim to be meritorious, and resentenced him to precisely the same sentence with credit for time served. This enabled Pope to appeal timely. The court also appointed an attorney to handle the appeal. It is this direct appeal from Pope's 1985 conviction that is before us.

## DISCUSSION

We have jurisdiction over appeals from federal criminal convictions pursuant to 28 U.S.C. § 1291.

### A. *The Denial of a Continuance*

■ Pope claims that the district court abused its discretion in denying his motion for a continuance that would have enabled him to have a psychiatric evaluation by a doctor appointed for the defense. The district court has considerable latitude in granting or denying continuances. *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir.1985). To establish abuse, a party must show that the denial was "arbitrary or unreasonable." *Id.*

■ *Flynt* sets forth the four factors that are relevant in reviewing a denial of a continuance for abuse of discretion: (1) the requester's diligence in preparing for trial; (2) the likely utility of the continuance, if granted; (3) the inconvenience to the court and the other side; and (4) prejudice from the denial.

### 1. Diligence

It is plain that defense counsel did not exercise adequate diligence in his pursuit of Dr. Kruzich to examine his client. After acquiring Dr. Kruzich's agreement to examine his client, Lynn allowed the four months before trial to pass without again talking directly with Dr. Kruzich. Two weeks before the continued trial date, Lynn wrote Dr. Kruzich, reminding him of the need to examine Pope, but neither talked with Kruzich directly nor sought another doctor. He asked for another continuance on the morning of trial but offered no adequate explanation for his request.

Appellant concedes that his *counsel* was not diligent, but the same cannot be said of appellant. Before trial he did the best he could to help himself. At his sanity hearing four days before trial, Pope asked the court to appoint him a new attorney. He stated that "Mr. Lynn hasn't got a hold of none of the witnesses for me that I asked him to get a hold of. This Mr. Kruzich, the doctor that was supposed to come and examine me for Mr. Lynn, he hasn't came and seen me yet. I'm supposed to go to the trial Monday and he hasn't got a hold of none of my witnesses." The court denied Pope's request.

On the morning of trial after Lynn had requested the continuance, the court questioned Pope as to his wishes. Pope said he wanted to "get it over with" so he could be returned to regular prison, "instead of over there in that isolation cell." He then told the court:

Saturday night I'm sitting there reading the Bible and one of them comes over the speaker talking about, "This is God. Don't do that, and don't do this, and don't do that," you know. I can't deal with that. You know, if you call them

good conditions, I don't think they're too humane, you know.

After making sure that the witnesses who had examined appellant for the government would be available for cross-examination, the court, "in view of the defendant's feeling in this matter," denied the continuance.

We have no difficulty concluding that the diligence of Pope was adequate. *See Flynt*, 756 F.2d at 1360; *Armant v. Marquez*, 772 F.2d 552, 557 (9th Cir.1985). The questions, however, are whether the court should have (1) allowed the failures of his counsel to deprive him of the only defense he had; and (2) paid heed to Pope's preference to proceed to trial without further delays. The first answers itself. Pope, when he realized that his counsel had not succeeded in getting Dr. Kruzich to examine him asked for new counsel who would pursue the preparation of the defense. He should not be deprived of a defense. The answer to the latter is less clear. However, the court's colloquy with Pope should have alerted the court to the defendant's flawed perception of reality and should have underscored the importance of a continuance to enable the defense to secure a psychiatric evaluation.

The government contends that to establish the utility of a continuance Pope must show, inter alia, not only who the witnesses are, but also what they would say in testimony, and that they could be obtained if the continuance were granted. *United States v. Hoyos*, 573 F.2d 1111, 1114 (9th Cir.1978). In *Flynt*, however, we distinguished *Hoyos*, noting the inability to state *what* the testimony would be where the continuance was sought to provide time for a psychiatric evaluation. *Flynt*, 756 F.2d at 1360. Since the requested continuance was to permit time for evaluation, Flynt "obviously could not present to the court the substance of [the witnesses'] testimony." *Id.* We held it should have been apparent from Flynt's behavior that such testimony would be relevant. Nothing more should be required.

This case is similar. Appellant cannot tell us what Dr. Kruzich's evaluation would be. But since insanity was Pope's only defense, testimony from Dr. Kruzich would have been relevant. The fact that Dr. Kruzich was available and had expressed a willingness to conduct the examination, indicates his testimony could have been obtained had the court granted the continuance. The continuance, therefore, would have been useful.

### 2. Inconvenience

We must examine the extent to which the court and the opposing party, including its witnesses, would have been inconvenienced by a continuance. *Flynt*, 756 F.2d at 1359.

Unlike *Flynt*, where only a hearing on a show cause order was involved, here the court was faced with a requested continuance on the day of a trial with jurors present, and seven government witnesses waiting, two of whom had come from out-of-state. We held in *Armant* that recalendaring a one-day trial would not have created grave scheduling difficulties, but that was a case where the government's three witnesses all were local. *Armant*, 772 F.2d at 557. Undeniably, this district court faced greater potential inconvenience.

Nonetheless, the district court could have held the continuance Pope sought to one or two days. Indeed, the district court could have taken an active role in making sure the evaluation took place and quickly. Balanced against the importance to Pope's defense of a psychiatric evaluation, the inconvenience did not justify the denial.

### 3. Prejudice

To warrant reversal the defendant must show prejudice from the denial of the continuance. *See Flynt*, 756 F.2d at 1359; *Armant*, 772 F.2d at 556–57.

In the context of this case, as in *Flynt*, the prejudice is the inability, without the continuance, to obtain the only testimony potentially supportive of his insanity defense. We said in *Flynt*,

It is clear that appellant's sole defense ... was that he lacked the requisite mental capacity to commit the offense. It is equally clear that he could not establish this defense without the testimony of expert witnesses. Although he had iden-

tified his expert witnesses, they had not had an opportunity to examine him and, therefore, were not in a position to testify. Thus, the result of the court's refusal to grant a continuance "was to deprive the accused of the only testimony potentially effective to his defense." *Id.* at 1361, quoting *United States v. Fessel,* 531 F.2d 1275, 1280 (5th Cir.1976). Facing an irrefutable factual case by the government that he committed the acts charged, Pope's only defense was insanity. He had identified his expert, made arrangements to be examined as to his sanity, and identified the defense he hoped to establish.[1] And there was substantial evidence to suggest that Pope was insane. He had been diagnosed as schizophrenic. The reason he found jail conditions intolerable was the constant intrusion of messages from God coming over the loudspeaker. During his jail stay, a psychologist was called because of his observed mental state that was concerning to his jailors. He recommended hospitalization.

The court's denial of even a brief continuance thus deprived Pope of the only testimony that could plausibly have helped him. He was clearly prejudiced.

■ We review the denial of a continuance on a case-by-case basis, *Armant,* 772 F.2d at 556. There are no mechanical or exact measures to determine when reversal is warranted. *Flynt,* 756 F.2d at 1362. We conclude: Pope was diligent in pursuing his defense, the continuance could have been brief enough to cause only minimal inconvenience, and would have been useful; by denying Pope's motion, the district court prejudiced his defense. On these facts, we find that the district court abused its discretion.

## B. *Ineffective Assistance Claim*

Appellant also contests his conviction on the ground that he was denied the effective assistance of counsel, in derogation of his rights under the sixth amendment.

■ Since the trial court's denial of the continuance compels reversal, we do not reach Pope's ineffective assistance claim. Ordinarily such claims, in any event, are not reviewed on direct appeal. *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir.1984) (per curiam). Challenge by way of a habeas corpus proceeding is preferable as it permits the defendant to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted. *See United States v. Birges,* 723 F.2d 666, 670 (9th Cir.1984).

## C. *The Court's Comments on the Evidence*

Appellant's final claim is that the court's remarks on the evidence at the end of trial exceeded the bounds of fair comment and constituted prejudicial error. Appellant takes exception to the district judge's comments spoken to the jurors just before they retired. He told them:

> The law of the United States permits the judge to comment to the jury on the evidence in the case. Such comments are only expressions of the judge's opinion as to the facts and the jury may disregard them entirely since the jurors are the sole judges of the fact. At this time I'm going to comment a little bit on the evidence.
>
> It appears here that you have to weigh the testimony of the witnesses in this question of intent and knowledge. You have here a defendant, the evidence shows, that was sent to a halfway house as a temporary step to help him adjust for release in the not too distant future. You have the testimony of those people who worked with him as to his conduct and his appearance. You have the fact that he was released from the prison to the halfway house, indicating that the people who had him in custody felt that

---

1. This set him apart from the appellants in the type of case in which we usually find no prejudice. *See, e.g., United States v. Lane,* 765 F.2d 1376, 1379 (9th Cir.1985) (no prejudice because defendant failed to show which witnesses he would have called, which documents he couldn't examine, or what defenses he might have explored); *United States v. Long,* 706 F.2d 1044, 1053 (9th Cir.1983) (denial of continuance upheld because appellant failed to identify any additional evidence he would have presented).

he was able and competent to prepare himself for entering society.

You have to look at the question as to why he was getting a car when he had time to do that. You have to look at the evidence of the salesman, Mr. Sparks, who saw him, testified that he seemed normal in every respect to him. Would he have let him take the car if he had appeared to be under the influence of alcohol or drugs?

You have to determine whether it's reasonable to infer that if a person takes a car in Idaho and ends up driving it in Illinois, that he took it across state lines in the process.

You have to weigh the fact that early in his imprisonment in Springfield, that he was diagnosed as a schizophrenic. Later, the medical officer looked and questioned whether he was a good actor. Then you have out here that four months after the crime, why, he was diagnosed by Mr. Nelson as a schizophrenic. And against that you have the testimony of—I notice, Mr. Nelson interviewed him for a half an hour. And then against that you have the testimony of the other psychiatrist who spent seven hours with him and testified that he felt that at the time of the crime, that he was competent and capable and understood what he was doing.

Now only you can weigh that evidence. And I haven't decided at all. You have to recall and you have to look and see: Does the evidence at the time indicate that he was capable of making the decisions he had to make or does it not?

Now as I've told you, my comments are only expressions of my opinion and you may disregard them entirely because you have the responsibility of making the decision as sole judges of the facts.

Pope contends these comments conveyed a sentiment of partiality incompatible with the judge's duty to retain the appearance of neutrality. Appellant also argues that some of the statements either misconstrued the evidence or drew impermissible inferences from it. There was no evidence in the record, for example, that those who released appellant from the halfway house felt he was capable of entering society. Nor, contrary to the court's characterization, was either of the medical witnesses a psychiatrist. The stress on the disparity in time spent by the two experts in evaluating Pope is unfortunate in light of the denial of a continuance to permit thorough evaluation of Pope's condition for the defense.

While we recognize that federal district judges are permitted to comment on the evidence, we suggest the trial court's remarks in this case at a minimum bordered on the impermissible. Because we reverse on other grounds, we do not determine whether the court's comments constituted reversible error.

## CONCLUSION

On the facts of this case, the court abused its discretion in denying a continuance. Pope is entitled to a new trial.

REVERSED and REMANDED.