**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Deborah Jean ROSS, Defendant–
Appellant.**

No. 98–50071.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 2000.

Filed March 16, 2000.

David Katz, Los Angeles, California, for the defendant-appellant.

Robert E. Dugdale, George S. Cardona, Assistant United States Attorneys, Los Angeles, for the plaintiff-appellee.

Before: WALLACE, PREGERSON and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Deborah Jean Ross appeals from her conviction for misappropriation of postal funds in violation of 18 U.S.C. § 1711. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I

Ross was a twenty-six year employee of the United States Postal Service ("Postal Service"), whose duties included selling money orders to the public. United States postal money orders are designed to be issued sequentially in exchange for cash, and postal clerks trained to sell them accept responsibility for money orders in 100–count sets. The clerks are held personally responsible for the value of any money orders that are sold but not properly accounted for to the Postal Service.

The Postal Service accounts for the proceeds from money order sales in several ways. The postal clerk is required to turn in a "voucher" that documents the amount and serial number of each money order sold, as well as the date on which it was sold and the office where it was sold. The clerk must also record the transaction in a computer, which generates a "money order tape" and an electronic transmission that is sent to the central Postal Service accounting office responsible for reconciling money order proceeds. Finally, the clerk is required to document each sale on a Daily Financial Report Form by listing the serial numbers and amounts of the money orders sold each day.

In March of 1995, the Postal Service discovered that 81 money orders from two separate 100–count sets were cashed at the post office in Los Angeles where Ross worked, but that the proceeds were never remitted to the Postal Service. Soon thereafter, it was confirmed that, in January and February of 1995, Ross had signed for and taken possession of the two money order sets at issue. However, she did not submit any cash or vouchers for the 81 money orders on the dates that they were sold. She did not report the money orders lost or stolen. Although she did later report and remit money from some of the sales of the 81 unaccounted for money orders, this was not accomplished until weeks after the money orders had already been cashed.

On April 25, 1995, Ross was suspended from her employment with the Postal Service. On that day, postal inspectors discovered four carbon copies of postal money orders in Ross's possession. Carbon copies of money orders, along with the money orders themselves, are given to the customers at the time of purchase. The carbon copies matched four of the 81 money orders at issue, but they did not list Ross as the payor or the payee. In total, the 81 money orders were worth in excess of $15,000.

On April 11, 1997, a federal grand jury returned an indictment, charging that Ross, in violation of 18 U.S.C. § 1711, had "unlawfully used, embezzled, hypothecated, and converted to her own use, more than $1,000 that had come into defendant's possession and control in the execution of and under color of her office and employment." At trial, the defense argued that the incriminating carbon copies were not actually found in Ross's possession as the government claimed, suggesting that the postal inspectors had planted them in Ross's purse. The defense also argued that someone other than Ross could have stolen the money order proceeds and tampered with her accounting records. Following a four-day jury trial, Ross was found guilty. She now timely appeals.

## II

The district court did not err in granting the government's unopposed motion *in limine* "to exclude any evidence of defendant's intent to pay back proceeds embezzled from the United States." A motion *in limine* is a proper vehicle by which the government may challenge the sufficiency of an affirmative defense before trial. *See United States v. Aguilar*, 883 F.2d 662, 692 (9th Cir.1989). Although we generally review the district court's ruling on a motion *in limine* only for an abuse of discretion, *see United States v. Rude*, 88 F.3d 1538, 1549 (9th Cir.1996), we review the decision *de novo* if the order precludes

presentation of a defense. *See Aguilar,* 883 F.2d at 692.

The government based its motion on the theory that intent to repay is not a defense to misappropriation of postal funds under 18 U.S.C. § 1711, citing *Withrow v. United States,* 420 F.2d 1220, 1224–25 (5th Cir. 1969). Although we have not previously considered this question, we agree with the Fifth Circuit's conclusion, which is consistent with our analysis of similar statutes. *See, e.g., United States v. McCormick,* 72 F.3d 1404, 1409 (9th Cir.1995) (intent to repay not a defense to the crime of providing a false statement to a bank); *United States v. Alcantar,* 832 F.2d 1175, 1179 (9th Cir.1987) (intent to repay not a defense to embezzlement and conversion of bank funds); *United States v. Benny,* 786 F.2d 1410, 1417 (9th Cir.1986) (good faith intent to repay not a defense to mail fraud); *United States v. Coin,* 753 F.2d 1510, 1511 (9th Cir.1985) (per curiam) (intent to repay not a defense to embezzlement of tribal funds); *United States v. Faulkner,* 638 F.2d 129, 130 (9th Cir.1981) (intent to repay not a defense to embezzlement from interstate shipments). As we explained in *Coin,* 753 F.2d at 1511, "[s]uch crimes are complete when the misapplication or embezzlement occurs." Indeed, to date we have refused to extend the repayment defense beyond the unique realm of check-kiting cases. *See Alcantar,* 832 F.2d at 1179. There is no reason to apply a different analysis to 18 U.S.C § 1711. Thus, the district court properly granted the government's motion *in limine* to preclude evidence of the legally unviable defense.

Ross further argues that the order granting the motion was "over-broad" because it precluded her from presenting evidence that she had, in the past, overpaid funds to the Postal Service, thereby effectively offsetting any monies that were unaccounted for in 1995. Our review of this claim is limited to plain error because Ross failed to raise it in the district court below. *See United States v. Lui,* 941 F.2d 844, 846 (9th Cir.1991). The order, by its terms, does not specifically exclude such evidence. Thus, there was no error, much less plain error, in the scope of the district court's order granting the government's motion *in limine.*

## III

We also reject Ross's contention that her indictment was insufficient because it failed to specify criminal intent. "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions." *United States v. Bailey,* 444 U.S. 394, 414, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (quoting *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). "Criminal intent is an element of a violation of § 1711." *United States v. Morrison,* 536 F.2d 286, 287 (9th Cir.1976).

Because Ross did not object to the sufficiency of the indictment in the district court, we review for plain error. *See* Fed. R.Crim.P. 52(b). Moreover, where an objection to the sufficiency of an indictment is untimely, as in this case, we will construe the indictment liberally in favor of validity. *See United States v. Chesney,* 10 F.3d 641, 643 (9th Cir.1993) (citing *United States v. Pheaster,* 544 F.2d 353, 361 (9th Cir.1976)).

Construed liberally, the indictment in this case, which alleged Ross had "unlawfully used, embezzled, hypothecated, and converted to her own use, more than $1,000" in postal funds, fairly informed her of the charge she faced under 18 § 1711. *See United States v. Willis,* 515 F.2d 798, 799–800 (7th Cir.1975). Indeed, "the word 'embezzle' connotes to both lawyers and laymen that the act was performed with wrongful intent." *Id.* at 800 (internal quotations omitted).

*Morrison* does not compel a contrary result. In *Morrison,* 536 F.2d at 289, we

held that the word "convert" as used in an indictment under § 1711 did not embrace the concept of criminal intent because it could also describe a tort. Accordingly, we held that an indictment which alleged conversion without an additional allegation of the requisite *mens rea* did not properly allege an offense under § 1711. *See id.* However, the indictment in *Morrison* only alleged conversion; it did not claim that the defendant "unlawfully used, embezzled, hypothecated, and converted" postal funds, as the indictment in this case did. Given the liberal construction required by the untimely objection to indictment sufficiency, coupled with the addition of the term "embezzled," we conclude that the indictment alleged the requisite criminal intent sufficient to place Ross on proper notice of the elements of the offense charged and against which she was required to defend.

■ Ross also alleges that there was prosecutorial misconduct before the grand jury because the prosecutor did not inform the grand jury of the definition of "hypothecate." Even assuming the claim is meritorious, we cannot entertain it because Ross waived it by failing to raise it before trial. *See* Fed.R.Crim.P. 12(b), (f).

## IV

■ Ross's claim that the government tampered with her most important witness is also not viable because, even assuming it is true, Ross cannot demonstrate prejudice. Relief for alleged prosecutorial misconduct is available only if the defendant can prove she was prejudiced thereby. *See United States v. Lopez,* 4 F.3d 1455, 1464 (9th Cir.1993) (citing *United States v. Owen,* 580 F.2d 365, 367 (9th Cir.1978)). Ross claims that the prosecutor attempted to dissuade her witness from testifying by telling her she did not have to honor the subpoena. However, the witness appeared and testified at trial in response to the subpoena. Ross further asserts that this misconduct flustered the witness so that her performance on the witness stand was not persuasive. The record does not demonstrate the truth of that assertion; however, even assuming

that to be the case, such "vague claim[s]" are wholly insufficient to establish prejudice. *Owen,* 580 F.2d at 368.

## V

■ Finally, Ross claims that her trial counsel was ineffective. Claims of ineffective assistance of counsel are generally inappropriate on direct appeal. *See United States v. Pope,* 841 F.2d 954, 958 (9th Cir.1988). Such claims normally should be raised in habeas corpus proceedings, which permit counsel "to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." *Id.* We review ineffective assistance claims on direct appeal under two circumstances: (1) "when the record on appeal is sufficiently developed to permit review and determination of the issue," or (2) "when the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *United States v. Robinson,* 967 F.2d 287, 290 (9th Cir.1992) (citations omitted). The record is not sufficiently developed on Ross's ineffective assistance of counsel claim. Therefore, we decline to address it on direct appeal.

AFFIRMED.