**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Francisco Jimenez RECIO, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**Adrian Lopez–Meza, Defendant–Appellant.**

Nos. 99–30135, 99–30145.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2000.[1]

Filed Sept. 27, 2000.

(9th Cir.1990); *United States v. Sweeten*, 933 F.2d 765, 768–72 (1991).

1. Publication is pursuant to Ninth Cir. R. 36–2(g).

M. Karl Shurtliff, Pike & Shurtliff, Boise, Idaho, for defendant-appellant Recio; Thomas A. Sullivan, Wiebe & Fouser, Caldwell, Idaho, for defendant-appellant, Lopez–Meza.

Alan Burrow (argued), Assistant United States Attorney, Department of Justice, Boise, Idaho; Kim R. Lindquist (briefed),

Assistant United States Attorney, Department of Justice, Boise, Idaho, for the plaintiff-appellee.

Before: BROWNING, FLETCHER, and GOULD, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Francisco Jimenez Recio and Adrian Lopez–Meza appeal their convictions of conspiracy to possess with intent to distribute a controlled substance on the same grounds and Recio also appeals his conviction for possession with intent to distribute based on ineffective assistance of counsel.

■ Both argue the district court should have granted their motion for judgment of acquittal after both the first and second trials under *United States v. Cruz*, 127 F.3d 791, 795 (9th Cir.1997), in which we ruled that a conspiracy to distribute illegal drugs ends when law enforcement authorities confiscate the drugs.

In *Cruz*, two individuals on their way to Guam to deliver methamphetamine to Cruz were arrested and their drugs were confiscated. *Id.* at 794. Because Cruz was clearly not brought into the drug scheme until after the drugs were seized, this court held that the evidence was insufficient for any rational jury to have found, beyond a reasonable doubt, that the conspiracy to distribute and to possess with intent to distribute was in existence at the time Cruz became involved. *Id.* at 796.

Viewing the evidence in the light most favorable to the government as we must, see *United States v. Yossunthorn*, 167 F.3d 1267, 1270 (9th Cir.1999), we must determine whether any rational jury could find, beyond a reasonable doubt, that Recio and Lopez–Meza were involved in the conspiracy prior to the initial seizure of the drugs in Nevada, which took place on November 18, 1998 at 1:18 A.M.

The district court held, and the government argues, that there was some evidence tying Lopez–Meza and Recio to the conspiracy before the drugs were initially seized. The district court stated that "Lopez's and [Recio]'s words and conduct, upon their picking up the truck in Nampa and subsequently being stopped by the authorities, provided a probative link between themselves and the specific conspiracy charge." Moreover, before the initial seizure, both Recio and Lopez–Meza allegedly called the same telephone number in Idaho and different numbers in Chicago using pre-paid calling cards.

This is insufficient evidence of guilt. No specific words or conduct provided a probative link between Defendants and a pre-seizure conspiracy. Defendants' words and conduct only revealed their general guilt which could be related only to their post-seizure pick-up of the contraband. As for the pre-paid calling cards, there is no proof that Recio and Lopez–Meza used these cards; any person could have used the cards by dialing the pin number code. The government produced no evidence identifying the participants in or the contents of the conversations. The phone numbers called are not probative of a conspiracy: the Idaho calls were to a communal telephone at a migrant camp and the Chicago calls were all to different telephone numbers.

The remaining evidence of an earlier conspiracy is similarly insufficient. Recio renewed his "non-owner" driver's insurance the day before his arrest, but that fact is hardly probative of earlier involvement in this conspiracy. That Recio and Lopez–Meza lied to officers upon arrest points only to knowledge that they were involved in illicit activity at that time and provides no basis for concluding that they were involved in the conspiracy before November 18, 1997.

On the other hand, there is strong evidence that Lopez–Meza and Recio were not involved in coordinating the conspiracy. The government's main witness, Arce, had never met either Lopez–Meza or Recio before the drugs were seized. Once

the police agreed to continue the drug operation, the police called an Arizona pager number to arrange for a drop-off, but neither Lopez–Meza nor Recio were among the three callers who responded to the page. In fact, one of the callers returning the page stated that he would send a "muchacho" ("boy" in Spanish) to get the truck, strongly suggesting that Defendants were simply drivers hired at the last minute. Furthermore, the initial conspiracy did not envision a drop-off in the Karcher Mall parking lot in Nampa, Idaho, where Lopez–Meza and Recio retrieved the truck—the police initiated the arrangement to meet there as part of their post-seizure "sting" operation.

Since the evidence at the first trial was insufficient, it was error to conduct a second trial. Accordingly, we decline to address Lopez–Meza and Recio's challenge to the sufficiency of the evidence and the jury instructions in the second trial. We need now only address those claims relevant to Recio's conviction at the first trial of possession with intent to distribute a controlled substance.

▮ The district court did not err by allowing evidence of the odor of burned marijuana in Lopez–Meza and Recio's blue Mazda. The evidence was relevant to the charge that Recio possessed marijuana with intent to distribute. *See United States v. Mayans,* 17 F.3d 1174, 1181 (9th Cir.1994). One of the primary issues was whether Recio knew there were narcotics in the flatbed truck when he and Lopez–Meza retrieved it. The fact that their own car reeked of marijuana makes it more likely that Recio was familiar with the odor and knew they were in possession of marijuana.

▮ The district court did not err by denying Defendants' motion for a mistrial based on the prosecutor's reference to a "stash house." Since the government had referred to the Nu Acres residence as the ultimate destination of the drugs without objection, it was not particularly prejudicial for the prosecutor to refer to that residence as a "stash house." Although

the prosecutor violated the court's instruction not to use the term, the prosecutor's misconduct does not require reversal since nothing in the record suggests the jury's verdict was affected by its use.

The district court did not abuse its discretion in admitting the expert testimony of Special Agent Hinton. It did not exceed the boundaries set by the district court or by Federal Rules of Evidence Rule 702.

▮ Recio's counsel's failure to move for acquittal on Count Two after the first trial constituted ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). But for the ineffective assistance of Recio's counsel, Recio would have been granted a new trial on Count Two.

Ordinarily, we do not reach claims of ineffective assistance of counsel on direct appeal, and only do so in habeas corpus proceedings. *See United States v. Ross,* 206 F.3d 896, 900 (9th Cir.2000). However, we review ineffective assistance claims where the record is " 'sufficiently developed to permit review and determination of the issue' " or where " 'the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel.' " *Id.* (quoting *United States v. Robinson,* 967 F.2d 287, 290 (9th Cir.1992)).

▮ The government's concession in its brief regarding the motion for judgment of acquittal provides such a record: "The Government agrees with the first premise, namely, that had Appellant's trial counsel made the motion for judgment of acquittal as to Count Two, the trial judge would have granted sua sponte the new trial as to both counts, as he did for co-defendant Lopez." This concession makes a sufficient record to find prejudice since all parties agree that Recio would have been granted a new trial but for the actions of his counsel. Although the government may not have dismissed the possession

with intent to distribute count against Recio before the second trial,[2] the fact that Recio was denied a new trial constitutes prejudice in its own right.

The conspiracy convictions are reversed and dismissed with prejudice because of insufficient evidence.

AFFIRMED IN PART, REVERSED IN PART.

RONALD M. GOULD, Circuit Judge, dissenting:

## I. PROCEDURAL BACKGROUND

Recio and Lopez proceeded to trial ("first trial") on counts of (1) conspiracy to distribute cocaine and/or marijuana, and (2) possession with intent to distribute cocaine and/or marijuana. The jury returned guilty verdicts on both counts. Lopez moved for judgment of acquittal on both the conspiracy count and the possession count under Federal Rule of Criminal Procedure 29(c). Recio moved for judgment of acquittal on the conspiracy count also pursuant to Rule 29(c). Both defendants argued that the evidence presented at trial was insufficient for a reasonable jury to reach a finding of guilt beyond a reasonable doubt. The district court denied the motions, but found sufficient error in the proceedings *sua sponte* to convert the Rule 29(c) motions into motions for a new trial pursuant to Federal Rule of Criminal Procedure 33. The district court then granted the motions for a new trial, vacated the convictions from the first trial, and ordered a second trial on the conspiracy count for both Recio and Lopez, a second trial on the possession count for Lopez, and sentencing on the possession count for Recio.

The case proceeded to trial again ("second trial"). Recio and Lopez were re-tried on the conspiracy count. The government dropped the possession count against Lopez. The jury returned guilty verdicts, and Recio and Lopez again moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), contending that the evidence presented in the second trial was insufficient for a reasonable jury to reach a finding of guilt. The district court denied the motions.

The court today reverses the convictions from the second trial, holding that the government in the first trial presented insufficient evidence to permit a second trial. I respectfully dissent because I take a different view of the evidence, under the proper legal standards. This case poses an important issue concerning the scope of reasonable inferences that may be drawn by a jury from evidence of criminal conspiracy. I respectfully dissent because I would hold that there was unmistakably more than sufficient evidence in the first trial to warrant a second trial. The majority today errs on this crucial issue, and then does not reach the issues presented by the parties regarding the second trial. Having also reviewed the issues regarding the second trial, I would affirm the district court's decision to deny the defendants' motions for a judgment of acquittal after the second trial, and let the jury verdict stand.

## II. FACTUAL BACKGROUND

On November 18, 1997, a Nevada police officer stopped a white flatbed truck occupied by Manuel Sotelo ("Sotelo") and Ramiro Arce ("Arce"). After a consent search the police found 369 pounds of marijuana and 14.8 pounds of cocaine. When questioned, Sotelo and Arce indicated that they did not know about the drugs and were merely driving the truck to Idaho where they had been instructed to leave it parked at the Karcher Mall.

The government's law enforcement agents then permissibly set up a sting. On November 19, 1997, the government placed the truck, still containing most of the drugs, at the Karcher Mall. Arce used

---

**2.** The circumstances suggest the government dismissed Count Two against Lopez–Meza only to avoid the incongruity of charging both defendants with conspiracy, but only Recio with possession, although both basically engaged in the same conduct.

a cellular phone to call a pager number that he had previously used to make arrangements for the pickup of the truck. When someone called back, Arce described the truck's location to the unknown caller. The unknown caller stated that "he was going to call a muchacho to come and get the truck."

About three hours later, a blue car driven by Lopez pulled up to the truck and stopped. Recio left the car and entered the truck. Both vehicles proceeded to drive west on different back roads. The police then stopped each vehicle, whereupon each occupant told the police a different and fabulously incredible story. The police smelled marijuana in the car that Lopez had been driving. The police also found phone cards and pagers on both defendants. The police then arrested Recio and Lopez.

Subsequently, Arce pled guilty and testified against Recio and Lopez at trial.

### III. DISCUSSION

#### A. The First Trial

We must review the evidence that was presented at the first trial against Recio and Lopez in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Yossunthorn,* 167 F.3d 1267, 1270 (9th Cir. 1999). "Once a conspiracy exists, evidence establishing beyond a reasonable doubt defendant's connection with the conspiracy, even though the connection is slight, is sufficient to convict defendant of knowing participation in the conspiracy." *United States v. Bautista–Avila,* 6 F.3d 1360, 1362 (9th Cir.1993) (citations and quotation marks omitted).

When we view the evidence here in the light most favorable to the government, a reasonable jury could have found sufficient evidence linking Recio and Lopez to the conspiracy before 1:18 a.m. on November, 18, 1997.[1] This issue is important because, absent sufficient evidence to convict Recio and Lopez in the first trial, retrial would be barred by double jeopardy. *See United States v. Coleman,* 208 F.3d 786, 794 (9th Cir.2000); *United States v. Cote,* 51 F.3d 178, 182 (9th Cir.1995) (double jeopardy bars a retrial on the same charge when a defendant's conviction is reversed on the sole ground that the evidence was insufficient to sustain the jury's verdict). If sufficient evidence was presented, then the district judge did not err in holding defendants Recio and Lopez subject to retrial. For both Recio and Lopez, retrial was correct.

#### Recio:

Recio told a totally fanciful and incredible story upon his arrest, from which a reasonable jury could draw an inference of guilt. Although police watched Lopez drop Recio off at the mall where he picked up the truck, Recio denied ever being dropped off at the mall. When asked what he had been doing at the mall, Recio said that he was shopping, and that he ran into a man who asked him to drive the truck to Recio's house for $250, and the man would pick it up later. Although Recio's house was a five-minute drive from the mall on the interstate, Recio's explanation for taking back roads was that "he liked to drive in the country." This story is so unbelievable that a reasonable jury would almost certainly view it as an implied admission of guilt. Although the majority may assume that this implied admission related only to Recio's post-seizure crimes, the government presented evidence from which a rea-

---

1. The district court ordered the defendants retried after the first trial because the first trial jury impermissibly was not instructed pursuant to *United States v. Cruz,* 127 F.3d 791, 795 (9th Cir.1997) (conspiracy to distribute illegal drugs ends when law enforcement authorities confiscate the drugs). In this case, pursuant to *Cruz,* the first trial jury should have been instructed to consider evidence linking Recio and Lopez to a conspiracy that ended when police officers seized the drugs from Arce and Sotelo at 1:18 a.m. on November 18, 1997.

sonable jury might infer that Recio was involved in the conspiracy before the seizure.

The government presented evidence that Recio was arrested driving a truckload of marijuana and cocaine worth more than $1.2 million. A jury might reasonably infer that co-conspirators would not entrust such a large value of drugs to a person not integrally involved in the conspiracy. It is unlikely that the unidentified conspirator on the phone who stated that he would send a "muchacho" would send an outsider to transport such valuable cargo. While there may be other theoretical possibilities, a jury reasonably could infer that the conspirators would send someone highly trusted, familiar with the conspiracy's scope and involved in the plan of illicit drug distribution.

Moreover, Recio carried a pager when he was arrested driving the truck, and Arce and Sotelo, co-conspirators arrested on November 18, 1997 at 1:18 a.m., also were found carrying pagers. A government expert witness testified that pagers are the most common item found when the government arrests people involved in drug deals. When viewed in the light most favorable to the government, a jury reasonably might conclude that, when Recio was found in possession of more than $1.2 million worth of marijuana and cocaine, Recio's pager is some evidence that he was involved in a drug conspiracy where other evidence demonstrated that the mode of communication among the conspirators was via pagers and telephone calls.

It is one thing to say that ubiquitous pagers used by messengers, executives, workers, and professionals are not in themselves evidence of participation in a drug conspiracy when found in usual settings, but it is quite another thing to say that multiple pagers in the hands of persons found astride a truckload of marijuana and cocaine are irrelevant, particularly where coconspirators Arce and Sotelo were also found with pagers. A key point ignored by the majority is the expert testimony linking pagers to drug conspiracies, testimony that a jury could have properly given weight. To disparage the pager testimony from an appellate distance is merely to argue about the weight of the evidence. This we cannot do because we must view the evidence in the light most favorable to the government.

Perhaps most importantly, Recio carried a non-owned named operator insurance policy when he was arrested. Such a policy insures vehicle operation by a non-owner of that vehicle. An agent testified that during his entire career in law enforcement, he had never encountered a policy like the one Recio owned. The government presented evidence demonstrating that Recio renewed the policy on November 17, 1997, the very day before the drugs were seized, and the day before he was arrested driving a truck he did not own loaded with more than $1.2 million of marijuana and cocaine. In the light most favorable to the government, a reasonable jury might infer that this was not "coincidence," and, instead, that Recio purchased the insurance policy the day before the seizure because he knew then that his job in the conspiracy was to drive a truck that he did not own carrying the marijuana and cocaine. Even drug-trafficking conspirators, it seems, want insurance.

The evidence of the non-owner operator insurance policy combined with probative evidence of Recio's incredible story upon arrest, the use of pagers and the very high value of the drugs in the truck, is solid evidence when viewed in the light most favorable to the government; it is clearly sufficient for a reasonable jury to have found beyond a reasonable doubt that Recio was involved in the conspiracy before the seizure of the drugs.

*Lopez:*

The situation with Lopez is much the same as with Recio. Lopez told a different but equally bizarre and incredible story upon arrest. He told the police that he lived with his girlfriend, but he did not remember her last name. When asked

what he was doing that night, Lopez denied that he had been to the mall, and said he was "out driving around" and that he was going to see his girlfriend. When asked where she lived, however, Lopez stated that he did not even know the city where his girlfriend lived. Again, the majority apparently concludes that this implied admission of guilt merely evidences post-seizure guilt, but the government presented sufficient evidence that Lopez, like Recio, was involved in the conspiracy before the seizure. Lopez was arrested carrying two pagers, and with Recio was involved transporting an exceptionally high value of marijuana and cocaine. Again, given this value, it seems almost certain, and at least a jury reasonably could infer, that the conspirators sent Lopez because he was trusted and involved.

Most strikingly, the government put forth powerful evidence closely connecting Lopez to a man named Raoul, the owner of the cocaine. Co-defendant Arce, who had turned on the conspiracy by cooperating in the government sting, testified that the cocaine in the truck was for Raoul. Arce also testified to a telling and candid conversation that he had with Lopez in a Boise, Idaho jail after his arrest and before trial: [2]

Q: [prosecutor] What did Mr. Lopez tell you?

A: [Arce] Well, he just asked me how they had arrested me, but I didn't really know [Lopez] or he didn't really know me.

Q: What else did he tell you?

A: That he had asked me how they had got me, because he was in the truck and—how they had gotten him because he was arrested in that truck also.

Q: Was something said about Raoul?

A: Yes.

Q: What did Mr. Lopez say about Raoul?

A: **He was the one that helped his Uncle Raoul.**

Q: What else was said about Raoul?

A: **That he was the owner of the cocaine.**

Q: Was something said about Flaco? [the name that Arce gave after the seizure, when assisting the government, to an unknown person who later said that he would send a "muchacho" to pick up the drugs].

A: Yes.

Q: What was said about Flaco?

A: **They said that I was helping the police because his Uncle Raoul had recognized my voice.**

TR 776–777 (emphasis added).

When this conversation is viewed in the light most favorable to the government, a reasonable jury certainly could connect Lopez to the conspiracy before the seizure of the drugs. This jailhouse conversation demonstrates that when meeting a member of the conspiracy, Lopez identified himself generally and broadly as "the one that helped his Uncle Raoul," the man who owned the cocaine. He did not say he "helped him once." He did not say he "helped him out that day." He did not say he merely "drove the truck." Recio's meaning by this statement that "he was the one" who "helped his Uncle Raoul" is doubtless ambiguous, but we must now interpret the meaning in the light most favorable to the government. Given this standard, a jury reasonably might infer that Lopez was Raoul's general helper, a trusted nephew, a confidant, a right hand man. A jury reasonably might also infer that Lopez served his uncle in these ways because he was privy to sensitive inside

**2.** The majority states that Arce "had never met Lopez or Recio before the drugs were seized." This is not entirely clear from the record when viewed in the light most favorable to the government. Although later in the trial Arce testified that the first time he met Lopez was in the Boise jail, when Arce first testified about his prior relationship with Lopez he stated: "I didn't really know [Lopez] or he didn't really know me." Given the other evidence, a jury may have inferred that Lopez was making a guarded admission of some degree of prior knowledge of Lopez.

information: that his Uncle, during the sting, recognized Arce's voice as "Flaco." It follows that the jury reasonably could infer that Lopez knew details of the drug shipment and that he intended to assist the conspiracy before the drugs were seized.

Finally, although the tone of this conversation cannot be discerned from the cold record, an impartial jury reasonably might have inferred from Arce's tone, or the words themselves, that this jailhouse conversation was in fact a jailhouse confrontation where Lopez aggressively confronted Arce for turning against the conspirators, including Lopez, by helping the police. This, too, reasonably ties Lopez to a pre-seizure conspiracy.

This jailhouse confrontation, the evidence of Lopez's implausible story, his two pagers, and his participation in the transportation of more than $1.2 million of marijuana and cocaine, together demonstrate that a reasonable jury could determine Lopez's participation in the pre-seizure conspiracy beyond a reasonable doubt, and in my view this evidence is more than sufficient to permit a jury verdict of conviction in the first trial had the jury been correctly instructed.[3] Therefore, the court should address alleged errors in the second trial that also yielded a jury verdict of conviction.

### B. The Second Trial

Recio and Lopez make several arguments to support their contention that the district court erred by denying their motions for judgment of acquittal after they were convicted in a second trial by jury. These arguments are not persuasive.

First, Recio and Lopez admit that the evidence in the second trial was largely the same as the evidence presented in the second trial, yet they argue that the evidence was insufficient at the second trial to sustain the conspiracy convictions. Because the evidence was sufficient in the first trial to sustain a guilty verdict upon proper instruction, the same evidence was sufficient in the second trial where the correct instruction was given. Recio and Lopez also challenge the sufficiency of evidence of a larger conspiracy, a conspiracy theory offered by the government in the first trial on its own, and in the second trial as an alternative ground upon which to convict. Because the evidence was sufficient to sustain a verdict pertaining to a pre-seizure conspiracy, I need not reach the issue whether the evidence was sufficient to sustain a larger conspiracy.

Second, Recio and Lopez assert three grounds of error regarding jury instructions. The first ground is that the district court gave alternative jury instructions, the first for the pre-seizure conspiracy, the second for an alternative larger conspiracy. Lopez and Recio argue that the district court erred by giving two separate conspiracy instructions because, while it gave the jury a general unanimity instruction, it did not instruct the jury that it must unanimously agree on one of the two conspiracy theories.

We review a district court's formulation of jury instructions for abuse of discretion. *See United States v. Beltran–Garcia,* 179

---

**3.** *See supra* note 1. I also conclude that we should not reach Recio's claim of ineffective assistance of counsel as set forth in the disposition at pages 6–7. We ordinarily do not reach ineffective assistance of counsel claims on direct appeal. *See United States v. Pope,* 841 F.2d 954, 958 (9th Cir.1988). Such claims normally should be raised in habeas corpus proceedings, which permit counsel "to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." *Id.* There are two exceptions to this general rule: (1) if the record is sufficiently developed to permit review and determination of the issue, or (2) where the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel. *See United States v. Ross,* 206 F.3d 896, 900 (9th Cir.2000). Here, the record lacks any mention of Recio's lawyer's reasons for failing to make the motion. Also, Recio's legal representation was not so inadequate that it obviously denied him a Sixth Amendment right to counsel. For these reasons, we should not reach Recio's ineffective assistance of counsel claim.

F.3d 1200, 1204 (9th Cir.1999). In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation. *See id.* at 1205. The trial court has substantial latitude so long as its instructions fairly and adequately cover the issues presented. *See United States v. Abushi,* 682 F.2d 1289, 1299 (9th Cir.1982). Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing that the district court abused its discretion. *See United States v. de Cruz,* 82 F.3d 856, 864–65 (9th Cir.1996). In *de Cruz,* where the defendant failed to demonstrate prejudice from an imperfect instruction, we held that the district court did not abuse its discretion. *Id.* Further, "the jury must be presumed to have followed [a] unanimity instruction and all agreed to at least one of several possible conspiracies even though no specific instruction was given to that effect." *United States v. Echeverry,* 719 F.2d 974, 975 (9th Cir.1983) (citing *United States v. Friedman,* 445 F.2d 1076, 1084–85 (9th Cir.1971)). Only when there appears to be a genuine possibility that the jury was confused or that a conviction resulted from different jurors concluding that a defendant committed different acts, general unanimity instructions do not suffice. *See Echeverry,* 719 F.2d at 975 (concluding that potential for such confusion exists when the jury presents questions indicating their confusion concerning multiple conspiracies).

Here, Recio and Lopez assert nothing more than the existence of alternative conspiracy instructions to demonstrate the possibility of genuine jury confusion. The presumption that jurors have followed a general unanimity instruction when several possible conspiracies were proffered holds absent evidence that there is a "a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice." *Echeverry,* 719 F.2d at 975. Here, Recio and Lopez have not with any specificity shown

true potential for juror confusion. Speculation is inadequate to defeat a presumption that a jury verdict is based on jurors following instructions. Further, Recio and Lopez have not demonstrated prejudice from the lack of a more particularized jury instruction. The district court did not abuse its discretion by failing to give a more particularized jury instruction.

Recio and Lopez also claim that, while the superceding indictment in this case alleges that they conspired to violate the narcotics law "from on or about a date uncertain, but by November 19, 1997," the district court's jury instruction indicated that the jurors could find Recio and Lopez guilty of the larger conspiracy, "whether [they joined] before or after November 19, 1997." Recio and Lopez argue that because the indictment limits proof to pre seizure evidence, the alternative larger conspiracy theory was never brought before the grand jury, thus they contend that to instruct on the larger theory constituted an impermissible variance.

Although it appears that Recio and Lopez objected to the jury instruction for the larger conspiracy, they failed to make a variance argument to the district court. We review only for plain error. *See United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We may exercise our discretion to correct such an error only when (1) the error is obvious; (2) the error affects substantial rights; and (3) a miscarriage of justice would otherwise result. *See United States v. Sayetsitty,* 107 F.3d 1405, 1411–12 (9th Cir.1997) (quoting *United States v. Olano,* 507 U.S. 725, 734–736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). An error is "clear" or "obvious" only if "a competent district judge should be able to avoid it without benefit of objection." *United States v. Turman,* 122 F.3d 1167, 1170 (9th Cir.1997).

The Fifth Amendment grants a defendant the right to be tried only on the grand jury's indictment. *See United States v. Olson,* 925 F.2d 1170, 1175 (9th Cir.1991). Sometimes divergence of trial

proof from an indictment is harmless error; other times such divergence constitutes an amendment that broadens the indictment, requiring per se reversal. *See id.* When time is not a material element of an offense, however, the court may constructively amend the indictment without violating the Fifth Amendment at all. *See United States v. Laykin,* 886 F.2d 1534, 1544 (9th Cir.1989) (requiring only that the defendants had adequate notice of the charges against them); *United States v. Echeverry,* 698 F.2d 375, 377 (9th Cir.1983) (dictum) (conspiracy conviction could be affirmed if the jury agreed upon a conspiracy of some duration even if not the time frame as charged in the indictment).

This variance issue might have presented a close question if Recio and Lopez had properly objected. However, they did not do so. In review for plain error it is significant that even if the indictment time frame differed from the jury instruction time frame in the second trial, the end date of the conspiracy was not an element of the crime charged against Recio and Lopez. *See Laykin,* 886 F.2d at 1535. Furthermore, because Recio and Lopez were tried on the larger conspiracy theory in the first trial, they cannot claim that they lacked notice of the larger conspiracy theory in the second trial. Under such circumstances, any variance did not rise to the level of plain error.

Recio and Lopez also make a cumbersome and complex argument that the wording of the jury instruction concerning the larger conspiracy impermissibly placed the burden on them affirmatively to prove the termination of the smaller conspiracy by demonstrating that no other loads of drugs existed. Again, because Recio and Lopez did not raise this argument before the district court, we review only for plain error.

There was no plain error from burden shifting. Every paragraph of Instruction No. 24 places the burden on the government to prove the defendants' involvement in the conspiracy, whether the small or the large, "beyond a reasonable doubt." Any

lack of clarity in the instructions does not rise to the level of plain error because a competent district judge cannot be expected to avoid this alleged complex burden shifting error without benefit of objection.

Fourth, Recio and Lopez argue that the district court erred by allowing the jury to hear evidence over objection regarding the odor of burned marijuana in the car that Lopez was driving when he was arrested. Recio and Lopez rely on *United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1012, 1013 (9th Cir.1995), to argue that the odor evidence should not have been admitted as an exception to Federal Rule of Evidence 404(b), and in any event, should have been excluded pursuant to Federal Rule of Evidence 403. Their argument lacks merit.

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *See United States v. Hernandez,* 109 F.3d 1450, 1452 (9th Cir.1997). An appellate court will only reverse for abuse of discretion if an evidentiary error more likely than not affected the verdict. *See United States v. Karterman,* 60 F.3d 576, 579 (9th Cir.1995). "Other act" evidence can be admitted as an exception to Rule 404(b) if (1) the evidence is "inextricably intertwined" with the charged crime, or (2) if the evidence is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Vizcarra–Martinez,* 66 F.3d at 1012, 1013 (excluding personal use methamphetamine in a case involving possession of a chemical precursor). Here, the district court did not abuse its discretion by concluding that the evidence could be admitted as "inextricably intertwined" and going to show knowledge, intent and the absence of mistake. For the same reasons, the district court did not abuse its discretion in finding the odor evidence relevant under Rule 403.

Recio and Lopez also argue that the district court erred by denying a motion for a mistrial due to prosecutorial misconduct and by failing to give a curative instruction regarding prosecutorial misconduct. I disagree. During trial, the

prosecutor referred to a place that the government argued was the intended destination of the drugs as a "stash house." Recio and Lopez objected to the use of this term. The district court sustained the objection, but allowed the government to refer to the residence as the destination of the drugs. At closing argument, the prosecutor again referred to the residence as a "stash house." The defendants objected, moved for a mistrial and requested a limiting instruction. The court sustained the objection, denied the motion for a new trial to allow more leeway because the prosecutor was engaged in argument, and did not give a limiting instructions.

The district court's denial of a motion for a mistrial is reviewed for abuse of discretion. *See United States v. Ramirez,* 176 F.3d 1179, 1183 (9th Cir.1999). A district court's refusal to give a limiting instruction also is reviewed for abuse of discretion. *See United States v. Soliman,* 813 F.2d 277, 278 (9th Cir.1987). To determine whether alleged prosecutorial misconduct requires reversal, this court must consider, in the context of the entire trial, whether the conduct appears likely to have affected the jury's ability to judge the evidence fairly. *See United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). Reversal is only required if it is more probable than not that the alleged misconduct affected the jury's verdict. *See United States v. Simtob,* 901 F.2d 799, 806 (9th Cir.1990).

Here, the prosecutor's reference to the alleged drug destination as a "stash house" during closing argument may have gone a bit beyond spirited advocacy, as the district court acknowledged by sustaining the defendants' objections. The court, however, instructed the prosecutor to refrain from referring to the alleged destination as the "stash house," and the prosecutor so refrained. Considering the weight of the evidence against Recio and Lopez, and the relatively benign nature of the prosecutor's statement in the context of the rest of the trial, the district court did not abuse its discretion by refusing to grant a motion

for a mistrial or by refusing to give a limiting instruction to the jury.

Finally, Recio and Lopez argue that the district court improperly admitted expert testimony under Federal Rules of Evidence 702 and 704 when Special Agent Anthony Hinton ("Hinton") of the DEA, after being qualified as an expert, opined over objection that (1) the conspiracy involved a large and complex organization, and (2) the conspiracy was involved in other prior loads of drugs. Second Trial Tr. 647–48.

This court reviews for abuse of discretion a district court's decision to admit expert testimony. *See United States v. Campos,* 217 F.3d 707, 710 (9th Cir.2000). Federal Rule of Evidence 702 provides that a qualified expert my testify if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Federal Rule of Evidence 704 allows a qualified expert to state an opinion regarding an ultimate issue, provided that the ultimate issue does not pertain to the mental state or condition of a defendant in a criminal case.

Here, the district court qualified Hinton as an expert based on his knowledge, experience, training and education. Second Trial Tr. 617–36. Hinton's testimony that the organization "was involved in other loads," while helping establish the existence of a larger conspiracy, was the agent's opinion, based on his expertise, of whether the facts and circumstances of this group of people and their activities demonstrated a conspiracy larger than just the one load of marijuana and cocaine. Because Hinton's testimony at all times remained within boundaries set by Rules 702 and 704, the district court did not abuse its discretion by admitting the testimony.

## IV.  CONCLUSION

The majority correctly is concerned that proof be made of criminal conspiracy beyond a reasonable doubt, but the majority incorrectly invades the province of a jury

when it holds that evidence in the first trial was insufficient. It is no answer to say that the jury in the first trial made no finding of pre-seizure conspiracy because it was improperly instructed. The legal test to determine if a second trial was permissible requires us to assess the boundaries of permissible inferences that a jury reasonably could have drawn when viewing all of the evidence in the light most favorable to the government. In this light, the evidence was sufficient to show a serious criminal conspiracy in which Recio and Lopez were involved before the drugs were seized. I would affirm the district court's correct decision to let the jury verdict stand after the second trial.